## ALEXANDER B. KAY vs. LEWIS H. KIRK.

*Adjoining land-owners on a Stream—Diversion of Water-course—Injunction.*

The owner of the upper tract of land through which a stream flows, will be restrained from cutting a ditch, and thereby diverting the stream from its natural course, in order to protect his meadow from overflow, where such diversion would so increase the current of the stream as seriously to injure the mill-dam of the owner of the lower tract by washing out the banks and filling the dam with mud.

APPEAL from the Circuit Court for Cecil County, in Equity.

The appeal in this case was taken from an order of the lower Court (WICKES, J.,) making perpetual an injunction previously granted. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, McSHERRY, and BRISCOE, J.

*Albert Constable,* for the appellant.

*William S. Evans,* and *W. T. Warburton,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed by the appellee against the appellant to obtain an injunction to restrain the latter from proceeding to cut a ditch through his meadow, to divert a stream of water from its natural and original course, whereby, as it is alleged, the plaintiff's mill-dam and water-power below would be greatly affected and irreparably damaged.

The plaintiff and defendant are adjoining land-owners on a stream called Stone Run, in Cecil County. The defendant is owner of the upper tract, and the plaintiff of the lower, upon which he has a mill-dam, and a grist and saw-mill in operation. The course of Stone Run is through the lands of both owners, and is, through the meadow-land of the defendant, somewhat winding, with several curvatures before it reaches the mill-dam of the plaintiff. The course of the stream is through a valley, and it is the receptacle of the drainage of a considerable water-shed, before it reaches the land of the defendant; and in times of heavy floods, which quite frequently occur, caused by rain or melting snow, the stream overflows its banks, and spreads over the meadow-land of the defendant. To prevent this, he proposes, and has commenced, to cut a ditch through his meadow, and thus straighten the course of the stream, but to intersect the original course of the stream, and to cause the water to flow down on its present bed from the point of intersection,—such point being upon the land of the defendant. It is to prevent this, and the diversion of the stream from its natural course as it now exists and runs into the dam of the plaintiff, that the application for an injunction was made by the plaintiff.

The plaintiff charges that the defendant is engaged in cutting a wide channel or ditch along the south side of and within a few feet of the plaintiff's mill-dam, and through one of the banks thereof, and into said dam, for the alleged purpose of preventing the overflow of his meadow. That the said ditch or channel when completed will be considerably lower than the banks of the plaintiff's dam, and will divert from and diminish the flow of the water therein, and in times of heavy rains and freshets, turn such a volume of water into said ditch or channel as will wash out and totally destroy the whole south side of the plaintiff's mill-dam. That if the de-

fendant is suffered to make such ditch or channel, and to divert the flow of the stream from its natural course, *the plaintiff's water-power will be totally destroyed, his mill property rendered entirely valueless,* and his milling business altogether broken up, and that he will thereby suffer irreparable damage, and that he has no adequate remedy at law.

The defendant, by his answer, insists that the making of the ditch is but a reasonable improvement of his property, and that the ditch is located entirely on his own land, and that the water which is taken from the present course of the stream, at the head of the ditch, and carried over the defendant's land, is all returned undiminished to the present or original bed of the stream before leaving the land of the defendant, and before reaching the mill-dam of the plaintiff. He denies that the ditch will affect the mill-dam injuriously, or that it will have any such damaging effect as that charged by the plaintiff.

There has been a large mass of testimony taken, and many witnesses have been examined on both sides. Each party has had made a plat of the premises, and filed it in the case, and much of the testimony, on the part of the defendant, has been directed to the plat made for the plaintiff, to show that it is inaccurate in several particulars, and that the plat made for the defendant is substantially correct. There was also a good deal of examination to show that the breast of the plaintiff's mill-dam had been raised some time within the last few years; but the testimony failed to establish this fact with any degree of certainty. At most it appears but as matter of conjecture on the part of some of the witnesses.

The main question presented by the testimony is, whether the completion of the ditch or new channel, as proposed by the defendant, and the diversion of the

water from its natural course, but its return to the original bed before leaving the land of the defendant, will either wash out any portion of the banks of the dam, or wash mud and earth into the dam, and thus fill it up, so as seriously to impair its capacity and usefulness. And the strong preponderance of the testimony answers this question in the affirmative.

It is true, the lines of intersection of the new channel with the original bed of the stream, at the head of the plaintiff's dam, would not be at right angles; but it would be at such angle, the original bed of the stream being narrow, that the current from the mouth of the ditch, in times of freshets, would be of sufficient velocity and force to tear out the opposite bank of the stream. This is the very decided opinion of many witnesses. If, however, the opposite bank should be strong enough to resist the force of the current from the mouth of the ditch proposed to be made, the testimony shows it to be very probable, that the mud and sediment that would be washed from the ditch, if not at once, at least in a short time, would fill up the dam,—the dam being small in area, and not of any considerable depth. Quite a number of witnesses, all long and well acquainted with the premises, and with the character of the stream, and who testify from their observation of the ground, concur in stating that, in their judgment, if the ditch be made as proposed by the defendant, it would be impossible for the plaintiff to keep his dam in repair. As stated by one witness, with whom several others coincide in their testimony: "The current of the ditch, if completed, would pass across the stream and against the opposite bank, into the gully"—(meaning a deep wash out near the bank of the stream.) "I believe it would break the banks into that gully and divert the water from the stream, and destroy the dam and water-power, and do the plaintiff irreparable damage. In my

opinion the dam could not be maintained if the ditch was completed. If it did not divert the water from the stream (which in my opinion it would do,) it would fill the dam with mud, and destroy it in that way. Light floods would fill the dam with mud, and large floods would break the bank and destroy it. The proposed ditch is through a meadow of light loam which would be washed by a small flood and carried into the dam."

There are several witnesses for the defendant who expressed different and variant opinions from those expressed by the witnesses for the plaintiff, as to the effect of the ditch upon the dam, and the danger likely to ensue to its banks. But, as we have said, the decided preponderance of the evidence is in support of the plaintiff's contention.

The principles of law applicable to the case would seem to be clear. It is settled that the diversion of a stream will not presumptively have any injurious effect as against a riparian owner whose land is situated lower down the stream than the point of diversion, if the water is reconducted to the stream before it reaches his land, and the quantity of water is not sensibly or materially diminished. It was held, in the case of *Embrey vs. Owen,* 6 *Exch.,* 353, a leading case in England, that the right to have a stream of water flow in its natural state, without diminution or alteration, is an incident to the property in the land through which it passes; but this is not an *absolute and exclusive right* to the flow of all the water, but only subject to the right of other riparian proprietors to the reasonable enjoyment of it; and consequently it is only for an unreasonable and unauthorized use of this common benefit that an action will lie. It is certainly the undoubted right of every riparian owner to have the water come to his land in its natural channel, and by its natural flow, undiminished in quantity, and unim-

paired in quality, except to that extent that results from a reasonable use of the water by other owners upon the stream; unless, indeed, such right be restricted or otherwise modified by grant or prescription. *Wood, Law of Nuis.*, sec. 350. But, while it is the clear right of an owner of a water-course to divert or change the course of the stream on his own land, provided he returns it to its original or natural channel before it reaches the land of an adjoining owner, this must be done in such manner as will not produce injury to the adjoining proprietor, either above or below. *Williams vs. Gale,* 3 *H. & J.*, 231. He must not by changing the direction of the flow of the stream so increase or diminish its velocity as to cause damage to the land of the adjoining proprietor, or impair his rightful use of the stream; nor can he make any change or diversion of the stream, though on his own land, which would cause the washing of mud and debris on to the land of his neighbor, to the injury of the latter, and which would not have occurred but for the change in the current of the stream. This principle is well illustrated by the decision in the case of *Gerrish vs. Clough,* 48 *N. H.*, 9. In that case the action was for diverting the current of a stream, by reason of which the plaintiff's land was washed away. The defendant, owning land on one side of the stream, built a break-water to prevent the water's encroaching upon his land, which had the effect to throw the current over upon and wash away the plaintiff's land opposite. It was held, that a riparian proprietor, for his own protection or convenience, has no right to build anything which in times of ordinary flood will throw the water on the grounds of another proprietor, so as to overflow and injure them. One may, say the Court, protect his own property; but though the water may overflow or encroach upon your land, you cannot protect your land to the prejudice or injury of your neighboring proprie-

tor. And for this general principle, *Angell on Water-Courses, secs.* 330-334, is cited.

In this case it is clearly shown, that by making the ditch through the meadow of the defendant, though he would thereby straighten the course of the stream, and would thus protect his meadow, at least to some extent, against the overflow of the stream in times of high water, yet the current of the stream would be given an impetus and strength that would certainly be damaging to the mill-dam of the plaintiff at times of flood. This the law does not sanction; and the learned Judge below was entirely right in making the injunction perpetual. The order appealed from must therefore be affirmed, with costs to the appellee.

*Order affirmed.*

