CHARLES HARTSHORN, Respondent, *v.* RANSOM M. CHADDOCK, Appellant.

A riparian owner, who, by his willful act, diverts the waters of a natural stream from its accustomed channel and causes them to flow upon the lands of his neighbor, is liable for the resulting damages.

In an action to recover such damages, when the reasonable cost of repairing the injury, or the cost of restoring the land to its former condition is less than the diminution in the market value of the whole property by reason of the injury, the cost of restoration is the proper measure of damages, to which may be added the loss of the use of the property in consequence of the injury; but when the cost of restoring is more than such diminution, the latter is usually the true measure of damages.

In such an action, evidence showing both the cost of restoring the land to its former condition and the diminution in its market value is admissible.

When damages are to be assessed upon one or the other of these two methods, according to the circumstances, and plaintiff's proof is confined to one of them, and defendant fails to supply proof as to the other, or to raise any question on trial as to the failure of plaintiff to supply it, the omission may not be availed of on appeal.

Where, in such an action, evidence was given by plaintiff showing the cost of restoring the land, and none was given by either party in regard to the effect of the injury upon the market value, *held*, that the evidence was sufficient to sustain an award of damages.

(Argued May 26, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1891, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*De Merville Page* for appellant. The referee adopted an improper measure of damages and received improper evidence to prove the same. (*Barrick* v. *Schifferdecker*, 48 Hun, 355 ; *Wallace* v. *Drew*, 59 Barb. 423 ; *Van Buren* v. *F. & M. W. Co.*, 50 Hun, 448 ; 105 N. Y. 503 ; 45 id. 562 ; 53 id. 152 ; 1 Sedg. on Dam. [7th ed.] 274 ; *Chipman* v. *Palmer*, 77 N. Y. 54 ; *Van Steenburgh* v. *Tobias*, 17 Wend. 562 ; *Auchmuty* v. *Ham*, 1 Den. 595.) The referee erred in finding that the plaintiff, or his predecessors, ever had any right to any lands north of the center of the creek. (*Jamison* v. *Cornell*, 5 T. & C. 629 ; *Van Wyck* v. *Wright*, 18 Wend. 157 ; *Higginbottom* v. *Stoddard*, 77 N. Y. 94 ; *Hall* v. *W. P. Co.*, 103 id. 139 ; *Smith* v. *Townsend*, 25 id. 479 ; *Cook* v. *McClure*, 58 id. 437 ; *Halsey* v. *McCormick*, 18 id. 147 ; 3 Kent's Comm. 428 ; *Miller* v. *L. I. R. R. Co.*, 71 N. Y. 380 ; *Carroll* v. *Diemel*, 95 id. 256.) The referee erred in admitting the declarations of Magee to Cridler and of Rochford to Thomas. (*McCarthy* v. *Whalen*, 87 N. Y. 148.) The referee erred in excluding the testimony of Fairchild. (*Kenally* v. *Selleck*, 21 Wkly. Dig. 72.) Upon the undisputed evidence, plaintiff's father was estopped from claiming the water course of the creek was farther north than it was in 1851. (*Lampman* v. *Milks*, 21 N. Y. 505 ; *Roberts* v. *Roberts*, 55 id. 275 ; *Pixley* v. *Clark*, 35 id. 520 ; *Harris* v. *Van Wait*, 96 id. 642 ; *James* v. *Cowing*, 82 id. 450.) The referee erred in permitting the declarations of Plimpton to be given in evidence and in refusing to strike the same out. (*C. B. Co.* v. *Paige*, 83 N. Y. 178 ; *Groat* v. *Moak*, 94 id. 115.) Plaintiff has wrongfully obstructed the stream, and contributed to the injuries complained of and can not recover for that reason.

(*Avery* v. *E. N. Co.*, 82 N. Y. 582; *Woodard* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 408; *Pierce* v. *Kinney*, 59 Barb. 56.) The referee has decided this case upon the erroneous theory that plaintiff's father, had the right to restore the creek to its original channel at any time within twenty years after it had gradually left it. (*Jones* v. *Turner*, 46 Barb. 533; *Gerrish* v. *Clough*, 48 N. H. 9; *Pierce* v. *Kinney*, 59 Barb. 56; *Wetmore* v. *A. W. L. Co.*, 37 id. 97; *Slater* v. *Fox*, 5 Hun, 554.) The flood of June first was so extraordinary and unusual as to be deemed an act of God, and defendant is not liable for the injuries caused by it. (*Wallace* v. *Drew*, 59 Barb. 413; *C. B. Co.* v. *Paige*, 83 N. Y. 178; Angell on Water Courses, §§ 347, 348, 349; *Jones* v. *Turner*, 46 Barb. 227; 6 Wait's Act. & Def. 432; *Price* v. *Harrison*, 44 N. Y. 94.) The proximate cause of this injury was this unusual flood, and the evidence does not justify a finding that these six piles caused the entire damage to plaintiff's property. (*Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *Sheldon* v. *Sherman*, 42 id. 484; Angell on Water Courses, § 347.)

*Daniel L. Benton* for respondent. Parties who cause a nuisance, by acts done on lands of a stranger, are liable for its continuance, and it is no defense that they cannot lawfully enter and abate the nuisance, without rendering themselves liable to the owner of the land. (*Smith* v. *Elliott*, 9 Penn. St. 345; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; 4 Wait's Act. & Def. 771; 63 Barb. 111; *Simmons* v. *Everson*, 124 N. Y. 319; *Swords* v. *Edgar*, 59 id. 35; *Irvine* v. *Wood*, 51 id. 230; 37 Hun, 38; *Beckwith* v. *Griswold*, 29 Barb. 291; 9 id. 345; 63 id. 114; *Cohen* v. *Mayor*, etc., 113 N. Y. 537; *Wenzlick* v. *McCotter*, 87 id. 127; *Jones* v. *Chantry*, 1 Hun, 613; *Campbell* v. *Seamen*, 63 N. Y. 568; *Snow* v. *Williams*, 16 Hun, 468.) The proper rule of damage is such damages as the plaintiff had sustained prior to the time of the commencement of the action. (*Jutte* v. *Hughes*, 67 N. Y. 267; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98–117; *Barrick* v. *Schifferdecker*, 123 id. 52.) The

defendant had no right to create a nuisance and speculate as to the probable consequences of his act. (*Salsbury* v. *Hirchenrode*, 106 Mass. 458; *Dickinson* v. *Boyle*, 17 Pick. 78; *Woodward* v. *Asorn*, 35 Me. 271.) Exceptions of the defendant are untenable. (Code Civ. Pro. §§ 1864, 1865; *Jutte* v. *Hughes*, 67 N. Y. 267; 109 id. 202; *Rindge* v. *Baker*, 57 id. 209; *Murtha* v. *Curly*, 90 id. 372; *Thatcher* v. *H. C. Assn.*, 46 Hun, 594; 12 id. 247–251; 36 id. 353; *E. L. Ins. Co.* v. *Cuyler*, 75 N. Y. 511–514; *M. L. Ins. Co.* v. *Meeker*, 85 id. 614; *Acer* v. *Hotchkiss*, 97 id. 408.)

O'BRIEN, J. The recovery in this case is based upon the wrongful obstruction by the defendant of a stream or water course, in consequence of which the plaintiff's land was flooded and the soil washed away and personal property thereon destroyed. The trial was had before a referee, and as the evidence was conflicting upon the essential issues of fact, we must be governed by the findings in reviewing the case. The Canacadea creek is a non-navigable stream, originally over one hundred feet in width, passing through the city of Hornellsville in an easterly direction. The lots of the plaintiff are on the southerly bank of this stream and those of the defendant on the northerly and nearly opposite each other. The lands in the vicinity have been from time immemorial subject to some overflow from the creek during freshets and in time of very high water, though it does not appear what if any damage resulted therefrom. In order to protect the lots abutting upon this creek, at the point in question, from the overflow, the owners on both sides had raised the banks by driving piles into the soil along the shore and covering them with planks and filling in behind with dirt and rubbish. On the northerly side, and in front of the defendant's lands, the stream had been encroached upon in this way prior to the year 1888, and narrowed so as to cause the water to flow upon the land of the plaintiff on the southerly side, though it does not appear that up to that time any very serious damage resulted. During the summer of 1888 the defendant extended

the piling, in front of his lands, some twenty-five or thirty feet farther into the bed of the stream. This new line of piles was covered with plank and filled in behind with earth and rubbish and constructed in such a way that the water would not flow through it. The referee finds that this formed a solid dam or obstruction extending into the channel of the stream, as it then flowed, obstructing the flow of water for nearly one-third of its width, as it existed before. The channel of the stream in front of the plaintiff's lands was thereby narrowed and obstructed to the extent of at least twenty feet. It is also found that the act of the defendant, in thus obstructing the flow of water in the stream, was illegal and dangerous to the lands of the plaintiff on the opposite shore, in time of freshets or high water. That on June 1, 1889, after a long and heavy rain, the water in the stream raised several feet, and increased in volume and velocity and the flow of the water was dammed and obstructed by the defendant's piling, and the water was thereby displaced and forced upon the lands of the plaintiff. That this flow of the water upon the plaintiff's land washed out his piling and the soil along the shore, and destroyed or carried way lumber, shingles, wood and other personal property of the plaintiff on his land. It is found that though the freshet was unusual, with respect to the volume of water, yet that similar ones but of less power have occurred in the past and are liable to occur in the future, from heavy rains or melting of snow, and in such cases the obstruction in the stream, created by the defendant, must force the water from its natural channel in which it was originally accustomed to flow upon the lands of the plaintiff. The referee reported that the plaintiff was entitled to judgment for the damages caused by the diversion of the water from the channel of the stream, by the defendant's act, to the plaintiff's lands, and he assessed the damages at $866.25. The General Term has affirmed the judgment.

Irrespective of any question of negligence or malice a riparian owner who by his willful act diverts the waters of a natural stream from its accustomed channel and causes them to flow upon the lands of his neighbor is liable for the resulting

damages.   (*McKee* v. *D. & H. C. Co.*, 125 N. Y. 353.)   All the facts necessary to the application of that principle have been found by the referee, and none of them are so destitute of evidence for their support as to warrant us in disturbing the judgment.   There is, however, a question of law in the case of some importance.   The referee allowed the plaintiff $320 the cost of sixteen hundred cubic yards of soil washed away by the flood.   On the trial a witness for the plaintiff was asked the following question :   "What is the value per cubic yard of filling in that washout?"   The defendant objected that the testimony was incompetent, and that the measure of damages sought to be proved thereby was improper.   The referee over-ruled the objection and the defendant excepted.   This exception raises the question whether this evidence was competent and admissible to prove the damages which the plaintiff had sustained.

There is no doubt that the diminution in the value of the land is the general rule for measuring the damages in an action for an injury to real property of a permanent character.   But this rule is subject to some exceptions, as it would in some cases be incapable of application.   If my neighbor remove from my land, by means of a trespass, a load of sand or gravel, the act might have no appreciable effect upon the value of the property as a whole, and yet I would be entitled to damages, but in that case they would be measured by the value of the sand or gravel removed, and the expense of repairing any injury caused by its removal.   If buildings are injured, fences or other fixtures removed, the cost of restoring the buildings and the value of the fixtures would generally constitute complete indemnity.   In this case the defendant is chargeable with removing a portion of the soil from the plaintiff's land.   Had the quantity removed been one yard, instead of sixteen hundred, no one, it is believed, would then contend that the plaintiff would be restricted to such damages as he could show by the diminution in value of the land.   In this respect, the present is a border case.   It is difficult to formulate a general rule that would apply to all cases of injury, such as this, to

real property. Had the defendant broken a window in the plaintiff's house, there is no doubt that the cost of completely repairing it would be the proper measure of damages. There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages.

The owner is not in every case of injury to the soil, the trees or the fixtures, driven to proof of the diminution in value of the estate by reason of the injury, in order to establish his damages. The rule seems to be that when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that in such a case the plaintiff shall diminish the loss as far as possible. (Sedgwick on Damages [8th ed.], §§ 932, 939, 947; *Graessle* v. *Carpenter*, 70 Iowa, 166; *Walters* v. *Chamberlin*, 65 Mich. 333; *Lentz* v. *Carnegie*, 145 Penn. St. 612; *Duffield* v. *Rosenzweig*, 144 id. 539; *Seely* v. *Alden*, 61 id. 302.)

The loss of the use of the property in the meantime, in consequence of the injury, has sometimes been allowed, and would seem to be reasonable and just. Therefore, proof of the cost of restoring the land to its former condition, and proof of the diminution in the market value of the lot, was in this case alike admissible. There were two methods of measuring the damages depending upon circumstances, and all competent evidence offered should have been received by the referee, and hence it was not error to admit proof of the cost of restoring the soil to the condition it was in before the overflow. (*Seely* v. *Alden, supra.*)

But there was no evidence offered by either party in regard to the effect of the injury upon the market value of the lot and we cannot know from the record whether the diminution in value was more or less than the cost of restoration. The evidence offered, being competent, furnished some proof as a

basis for the award of damages, and it cannot be said that the referee's finding as to the amount of damages sustained, is wholly unsupported by proof. When things attached to the soil, and, therefore, part of the realty, are injured or destroyed or some part of the soil itself carried away, the value of the thing injured or destroyed and the cost of replacing or restoring it, or the expense of restoring the soil to its condition prior to the injury or trespass, may be proved in an action by the owner to recover his damages. When all the evidence is in, it may turn out that the diminution in value of the freehold is the legal measure of damages, but the value of the thing taken or the cost of reparation is none the less evidence upon the question. (*Barrick* v. *Schifferdecker,* 123 N. Y. 52; *Argotsinger* v. *Vines,* 82 id. 308.)

The defendant's exception was aimed at the question of the admissibility of the evidence, and on that point the appeal must stand or fall. He did not raise the question that the testimony, though admissible, was not complete or sufficient to warrant the assessment of damages by the referee. The defendant could have proved the diminution in value of the lot either on cross-examination of the plaintiff's witnesses or upon his defense, but as he omitted to do this, or to raise any question except the admissibility of the testimony, he must be deemed to have waived the necessity of further and more complete proof on the part of the plaintiff. When, as in this case, damages are to be assessed upon one of two methods, according to circumstances, and the plaintiff's proof is by one of these methods only, and the defendant fails to supply the other mode of proof, which may be more favorable to him, or to raise any question as to the failure of the plaintiff to supply it at the trial, an appellate court ought not to reverse the judgment, especially in a case like this, where there is nothing to show, and no claim even made that the other theory of damages would be more favorable to the defendant.

As the ruling of the referee, which is challenged by the exception, was strictly correct, the judgment should be affirmed.

All concur.

Judgment affirmed.