Case 73.—ACTION BY ANNA S. BERRY AND OTHERS AGAINST THE CITY OF COVINGTON FOR DAMAGES TO LAND FROM SEWAGE OF THE CITY.—May 25.

## City of Covington v. Berry, &c.

Appeal from Kenton Circuit Court.

WM. McD. SHAW, Circuit Judge.

Judgment for plaintiffs. Defendant appeals. Affirmed.

Cities—Sewage—Injury to Adjacent Lands—Liability of City—Instructions—Measure of Damages—Evidence—Competency.

1. Cities—Sewage—Injury to Adjacent Lands—Damages—Liability of City—In an action against the city by the owner of about eight acres of land therein, on the margin of which the city opened two sewers, discharging thereon a deposit of foul matter to the depth of two or three feet, on which there was a pretty pond which was thereby made a cess pool, and which filth spread over about three acres of the land, impregnating and poisoning the air, and destroying the comfort and endangering the health of persons living several hundred yards away, a verdict for $2,250, under all the evidence, is held not to be excessive.

2. Instructions—Measure of Damages—On the trial of the case

City of Covington v. Berry, &c.

the court gave the following instructions, which are held to be correct.

"1st. The jury are instructed to find for the plaintiffs such damages as they believe from the evidence resulted to the plaintiffs' property from the discharge of sewage from the Bank Lick street and Holman street sewers, and the deposit thereof on the plaintiffs' property between May 24, 1898, and May 24, 1903.

"2d. In ascertaining said damages, the jury are instructed that there are two measures of damages: First, the diminution in value of the plaintiffs' property caused by said discharge and deposit between said dates, if there be any such diminution in value; and, second, the cost of restoration of said property to the condition it was in on May 24, 1898, if any such restoration be possible.

"3d. If the jury believe from the evidence that it is practicable and possible to restore said property to its condition on May 24, 1898, then the jury will adopt the one of said measures of damages which will result in the lesser damage to plaintiffs' property, not to exceed $5,000."

3. Same—The difference between the value of the property when the injury was inflicted and its value after the injury is not the proper measure of damages, where it is shown that there has been an increase in the value of the land due to the general enhancement of property in the neighborhood from the growth of the city.

4. Evidence—Competence—The court properly allowed the plaintiffs to show what was the expense of filling the place that was covered with slime, as this evidence tended to show the extent of the injury, and it was competent to show that they had used ordinary care to reduce the damages. The effect on the health of the neighborhood was also competent for the same reason, and to show why the market value of the property was lessened.

F. J. HANLON, City Solicitor, for appellant.

## AUTHORITIES.

1. No especial damages can be proven unless alleged in the pleading. (Jessee v. Shuck, 11 Ky. Law Rep., 463; Stroh v. South Covington & Cincinnati Street Railway, 25 Ky. Law Rep., 1868.)

2. Incompetent evidence admitted as to the measure of damages. (Elizabethtown v. Price, &c., 11 Ky. Law Rep., 367; City of Henderson v. Winstead, 22 Ky. Law Rep., 28; City of Coving-

ton v. Taffee, 24 Ky. Law Rep., 373; City of Maysville v. Stanton, 12 Ky. Law Rep., 596.)

3. Erroneous instructions given, which were offered by the plaintiff, and the instructions offered by defendant city upon the measure of damages should have been given. (City of Maysville v. Stanton, 12 Ky. Law Rep., 587; City of Henderson v. Winstead, 22 Ky. Law Rep., 28; City of Louisville v. Hegan, 20 Ky, Law Rep., 1532; Hay v. City of Lexington, 24 Ky. Law Rep., 1495; City of Covington v. Taffee, 24 Ky. Law Rep., 373.)

4. No instructions on special damages was authorized in this case and it was erroneous to give such instructions, because same was not warranted by the pleading. (Perdum v. Brussels, 23 Ky. Law Rep., 1796; South Covington & Cincinnati St. Ry. Co. v. Stroh, 23 Ky. Law Rep., 1807; City of Maysville v. Stanton, 12 Ky. Law Rep., 589.)

WALKER C. HALL for appellees.

1. Appellees were entitled to the enhancement of the value of their property by reason of the public improvements that had grown up in that neighborhood, and by reason of the money which they had expended on it in the way of making streets, putting in water pipes, etc., and the appellant, the City of Covington, could not take from them this enhancement in value of which they were entitled by the commission of the wrong complained of in the petition.

2. It was the theory of appellees upon the trial of this case below, which theory was adopted by the lower court, that there are two measures of damages that may be applied; that one of these measures is the diminution in the market value of the property injured because of the wrongful act of the city; that the other measure is the cost of repairing the injury done to the property in question, if such repair be possible; that the court was bound to adopt the one of these two measures which would result in the least damage to appellees' property.

3. Measure of damages are but approximations of damages. They are but rules that experience has found will, in the majority of cases, best aid juries and courts in arriving at the actual injury. They are not certain or fixed rules, but must give way before the circumstances of peculiar cases. These rules are designed to do justice, and not injustice, and when, in a case like the one at bar, the ordinary rules for arriving at the amount of damages seem impractical and impossible, the court will permit the claimant to adopt a method which will, under the circumstances of the case, best assist in the determination of the actual injury.

4. Counsel for appellant objected and excepted to the testimony of Dr. Averdict, to the effect that a nuisance of the sort charged against the city of Covington was detrimental of the health of the neighborhood, because, he says, the health of the community was not in issue or on trial. This is very true, and no one was seeking to recover for any injury to the health of the neighborhood. Dr. Averdict's testimony was material to show that such a deposit as was put upon appellees' land by the city of Covington was calculated to injure the property, and prevent people from buying and building upon it.

5. This court will not set aside a verdict for damages as excessive unless it is so excessive as to strike one, at first blush, as having been given under the influence of prejudice.

### AUTHORITIES CITED.

City of Covington v. Taffee, 24 Ky. Law Rep., 374; Elizabethtown, Lexington & Big Sandy R. R. Co. v. Combs, 10 Bush, 382; St. L., I. M. & S. Ry. v. Morris, 35 Ark., 622; City of Covington v. Ulrich, 14 Ky. Law Rep., 302; J., M. & I. R. R. Co. v. Esterly, 13 Bush, 667; Sedgwick on Damages, secs. 932, 940; Sutherland on Damages, sec. 1048, 1018; Lentz v. Carnegie, 145 Pa. St., 612; Harthorn v. Chaddock, 135 N. Y., 116; Seeley v. Alden, 61 Pa., 302; Bedwick on Damages, sec. 170; The St. L., Vandalia & Terre Haute R. R. Co. v. Haller, 82 Ill., 208; Kemper and Wife v. City of Louisville, 14 Bush, 87.

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

Appellees own a tract of about eight acres of land in the southwestern part of the city of Covington. The city constructed two sewers, which opened on the margin of the property, discharging the sewage upon it, causing a deposit of foul matter two or three feet deep. Appellees filed this suit to recover damages for the injury. A verdict and judgment having been rendered in their favor for $2,250, the city appeals.

The tract of land is on the outskirts of the city of Covington, partly in it and partly in the town of Central Covington. A few years ago it lay between the two towns, neither of which had built out to it; but within the last five years streets have been constructed, and a street car line built through it, furnishing rapid

transit to Cincinnati. The town of Central Covington has built up to the southern boundary of the tract, and the city of Covington has built a large school-house near the northern boundary. The value of the land has in this way greatly enhanced. Previous to the trial the city provided sewage which relieved the property of any further accumulations, and the action progressed simply for damages for what had been done. The proof on the trial showed that there was a pretty pond on the tract; that the sewage ran down into this pond, making it a cesspool, which sent out noisome odors, so that persons living several hundred yards away had to close their doors and windows facing in that direction. The filth spread over the land, making a deposit of slime upon it, covering something like three acres. The soil was impregnated and poisoned. The place stunk so that appellees could not sell any of their land for lots, although there was great demand for lots in that locality. Horses would mire in it and have to be dragged out by teams. Appellees, to get rid of the stench, had the filth covered up with dirt, which relieved that difficulty, but the land is still filled with noxious matter, and, if houses are built on it, slime will percolate into the cellars, and such a foundation will endanger the health of the occupants of the houses. This condition of things must continue until nature provides a remedy by the process of time. Under all the evidence we do not see, considering the shown value of the land, that the verdict of the jury is excessive, as there was evidence by a number of witnesses fixing the damages at more than twice as much as the jury allowed. The chief complaint of the city is that the court refused to give this instruction, which it asked: "If the jury believe from the evidence that the property of the plaintiffs was damaged by reason of the sewers in Holman

street and Bank Lick street emptying onto property of the plaintiffs, if they did so empty, they should ascertain from the evidence the market value of the said property just before the commission of said injury, if any, and the market value of said property after the commission of said injury, if any, up until the filing of this suit, and the diminution, if any, in the value of said property.'' It also complains that the court gave the following instructions: ''(1) The jury are instructed to find for the plaintiffs such damages as they believe from the evidence resulted to the plaintiffs' property from the discharge of sewage from the Bank Lick street and Holman street sewers, and the deposit thereof on the plaintiffs' property, between May 24, 1898, and May 24, 1903. (2) In ascertaining said damages the jury are instructed that there are two measures of damages: First, the diminution in value of the plaintiffs' property, caused by said discharge and deposit between said dates, if there be any such diminution in value; and, second, the cost of restoration of said property to the condition it was in on May 24, 1898, if any such restoration be possible. (3) If the jury believe from the evidence that it is practicable and possible to restore said property to its condition on May 24, 1898, then the jury will adopt the one of said measures of damages which will result in the lesser damage to plaintiffs' property, not to exceed five thousand ($5,000) dollars.''

It is insisted that the measure of damages in cases like this is the difference between the value of the property when the injury was inflicted and its value after the injury. The following cases are relied on: Elizabethtown v. Price, 11 Ky. Law Rep., 367; Maysville v. Stanton, 11 S. W., 675, 12 Ky. Law Rep., 587; Henderson v. Winstead, 109 Ky., 328, 58 S. W., 777, 22 Ky. Law Rep., 828; Covington v. Taffee, 68 S. W.,

629, 24 Ky. Law Rep., 373; and Hay v. Lexington, 114 Ky., 665, 71 S. W., 867, 24 Ky. Law Rep., 1495. In these cases the injury was not extended through a series of years, and there was no rise in the general price of property during the injury from other causes. But here the injury was continuous. It is shown by the evidence that the tract of land taken as a whole is worth more now than it was five years ago when the sewage began to be run upon it in quantities sufficient to hurt it, and, therefore, if the rule contended for had been applied by the court, there could have been no recovery at all. But the increase in the value of the land is due to the general enhancement of property in the neighborhood from the growth of the two towns, and the effect of the evidence is that, although the plaintiffs' property is worth several thousand dollars less than it would be without the accumulation of slime upon it, it is, with this upon it, more valuable than it was several years ago before the sewage was run upon it. If property in that neighborhood had diminished in value from extrinsic causes, the defendant's liability would not be thereby enhanced, and the fact that there has been a general rise in the price of property does not lessen its liability, for the reason that the rise in the price of property is from other causes, and not in any way connected with the defendant's wrong. The facts are that the defendant year by year empties its sewage upon the property. This was a trespass just as much as if it had carted the sewage there and dumped it on the land. The plaintiffs' cause of action lies in the fact that by the wrong of the defendant their property was placed in a condition in which it was less valuable than it would have been but for the defendant's wrongful trespass.

In J., M. & I. R. R. Co. v. Esterle, 76 Ky., 677, this

court, in answer to a similar objection, said: "Benefits arising directly from out of an unauthorized act may sometimes be considered in the determination of the sum to be recovered by the injured party, but in all cases these benefits must be direct and immediate. They must be confined to the proximate consequences of the act complained of, and be of like kind with the opposite injuries for which the recovery is sought. In a case where land had been overflowed by the erection of a milldam, the Supreme Court of Massachusetts aptly said: 'The damages are given only for the injury done to the land by flowing, and any reduction or set-off to that damage must consist from benefits arising from the same cause; that is, from flowing the land.' "

To the same effect are Covington v. Ulrich, 14 Ky. Law Rep., 302, and St. L., &c., R. R. Co. v. Morris, 35 Ark., 622; 4 Sutherland on Damages, sec. 1056, and cases cited.

The instructions of the court do not allow double damages, as counsel seem to think. They only allow the jury to adopt one of two measures of damages, and expressly direct them to follow that rule which would be most favorable to the defendant. This is in accord with the authorities.

In Harthorn v. Chaddock, 135 N. Y., 122, N. E. 998, 17 L. R. A., 426 (a case like this), the court said: "Had the defendant broken a window in the plaintiff's house, there is no doubt that the cost of completely repairing it would be the proper measure of damages. There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages. The owner is not in every case of injury to the soil, the trees, or the fixtures driven to proof of the diminution in value of the estate by reason of the injury, in order to estab-

lish his damages.   The rule seems to be that, when the reasonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages.   On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages; the rule of avoidable consequences requiring that in such a case the plaintiff shall diminish the loss as far as possible.''

In Sutherland on Damages, sec. 1048, the rule is thus stated: ''The cost of restoring property to its previous condition is the proper measure of damages for injury thereto when it is less than the diminution in the market value of the property by reason of the injury; but, if the cost of restoration would exceed the diminution in value, the latter measures the damages.''   (Seeley v. Alden, 61 Pa., 302, 100 Am. Dec., 642; Lentz v. Carnegie, 145 Pa., 612, 23 Atl., 219, 27 American State Rep., 717.)   The court properly allowed the plaintiffs to show what was the expense of filling the place that was covered with slime.   This evidence tended to show the extent of the injury, and it was competent for the plaintiffs to show that they had used ordinary care to reduce the damages.   The evidence was not introduced to show special damages, but simply to get the situation before the jury.   The effect on the health of the neighborhood was also competent for the same reason, and to show why the market value of the property was lessened.

Judgment affirmed.