EVA ROBB, Plaintiff, *v.* RUBEL BROS., INC., Defendant.

(Supreme Court, Kings Special Term, April, 1919.)

**Injunctions — who entitled to a permanent injunction — damages.**

> Plaintiff, the owner of a six-family brick building, rented five of the apartments for residential uses and occupied the other one herself. Defendant, the owner of the land adjoining, erected thereon, for the manufacture of ice, a building the easterly wall of which was against the westerly wall of plaintiff's building. The operation of the machinery of the ice plant causes constant vibration in plaintiff's building and the handling of the tanks and the dropping of cakes of ice are the cause of loud noises both day and night, more especially at night, thus creating such a condition that plaintiff would lose her tenants if it were possible for them to find other quarters, particularly those occupying rear apartments who have been compelled, in order to minimize the annoyance, to vacate their bedrooms and sleep in rooms on the other side of the house. *Held,* that plaintiff was entitled to a permanent injunction restraining the operation of defendant's ice plant.
>
> Plaintiff's property was worth $12,000 before the erection of defendant's building, but now is only worth $8,000. *Held,* that if defendant would avoid the granting of the injunction it must pay to plaintiff $4,000, the damages sustained by her, and the judgment to be entered will so direct.

ACTION for a permanent injunction and damages.

Nathaniel Tonkin, for plaintiff.

Samuel A. Telsey, for defendant.

BENEDICT, J.   This is an action for a permanent injunction and damages.   The plaintiff is now and, for a long time, has been the owner of the lot and building known as number 493 Blake avenue in the borough of Brooklyn.   Her husband built the house, which is a six-family brick building, three stories in heighth.   The plaintiff occupies one apartment and rents the other five apartments to tenants for residential uses.

The defendant is the owner of the land adjoining the plaintiff's property on the west and lying between that property and Van Sinderen avenue.   Upon its said lot or parcel of land, the defendant, about September, 1918, erected a brick building covering the entire space between Van Sinderen avenue on the west and the plaintiff's building on the east, and so constructed that the easterly wall of the defendant's building was against and in contact with the westerly wall of the plaintiff's building.   The defendant's building has, since its construction, been used and is now used for the manufacture of ice.   The defendant's buildings extend along Van Sinderen avenue far beyond the rear of the plaintiff's house, and consist of a number of large brick buildings, some of which are not, as yet, completed.   The front building of the defendant, facing on Blake avenue, consists of an engine-room on the street level with heavy and ponderous machinery propelled by electricity, and with an ammonia condenser on the roof close to the plaintiff's westerly side wall.   In the rear of the engine-room is a building used as a freezing room where large cakes of ice, frozen in heavy metal tanks or cans, are being handled after manufacture.   The

defendant's factory is operated by night as well as by day, the manufacture of ice there being a continuous process. The operation of the machinery causes constant vibration in plaintiff's building, which is noticeable there at all times. The handling of the tanks and the removing of the cakes of ice therefrom are the cause of loud noises, both by night and by day, and more especially by night. The ammonia condenser, which is placed upon the roof of this front building, is slightly lower than the roof of the plaintiff's house. The use of this condenser is such as to spray water against the plaintiff's wall and to keep it in a constant state of dampness. Water is also constantly percolating or seeping from defendant's premises through the westerly wall of the plaintiff's house into the cellar for a distance of about four feet above the heighth of the floor and for about eight feet in length towards the rear of the building. This water comes through the wall in such quantities that the plaintiff has had to have a special drain made in the floor of her cellar to carry off the surplus water that comes through the wall. The wall itself is soaked with the water and the mortar therein is loosened.

I have myself examined the situation, and find the condition to be as above described. This condition finds ample support in the evidence in the case; indeed, in many respects, it finds support in the testimony of the witnesses called on behalf of the defendant, some of whom, I am glad to say, testified truthfully concerning the condition, although they were, and I presume still are, in the defendant's employ.

The defendant's evidence shows, and, indeed, it was not denied, that some machinery and foundations for machinery than those already in place will shortly be put upon the defendant's property. Evidence of the same fact appeared to me upon my examination of the premises. The jarring of the plaintiff's house and

the noise at night of the dropping of large cakes of ice on the defendant's premises has created such a condition that, if it were possible for the tenants in the building to find other quarters, I am confident that the plaintiff would lose her tenants, especially those occupying apartments in the rear of her building, who have been compelled to vacate their bedrooms on the westerly side of the plaintiff's house and use the rooms on the easterly side for sleeping purposes to minimize the annoyance.

The facts in this case clearly come within the rule as to private nuisance which is established in our law, and within such rule the plaintiff is entitled to a permanent injunction to prevent the maintenance of such nuisances as have been established by the evidence in this case and which, unless restrained, will be a permanent trespass on the plaintiff's property. The plaintiff claims that before the erection of the defendant's building her property was worth $12,000, and that now it is only worth $8,000. I am inclined to agree with her in this claim, and shall, therefore, direct that the defendant, if it would avoid the granting of a permanent injunction restraining it from the operation of this ice-plant, pay to the plaintiff the sum of $4,000, which I find to be the damages sustained by the plaintiff. See *Friedman* v. *Columbia Machine Works,* 99 App. Div. 504; *McKeon* v. *See,* 51 N. Y. 302; *Fish* v. *Dodge,* 4 Den. 311; *Hartshorn* v. *Chaddock,* 135 N. Y. 116. Judgment is rendered accordingly, with costs.

Judgment accordingly.