WALTER MCKEE, APPELLEE, V. NEBRASKA GAS & ELECTRIC
COMPANY ET AL., APPELLANTS.

FILED APRIL 10, 1923. No. 22072.

1. **Waters:** DIVERSION: LIABILITY. Where the owner of a milldam
wilfully diverts the water of a natural stream into a millrace cut
through his own land and thereafter turns it back into the natural
channel at right angles, so that the water is carried by its own
momentum across the natural channel onto the land of the op-
posite riparian owner, he is liable for the damages resulting there-
from.

2. ———: ———: ———. A riparian owner, who by his wilful act
diverts the waters of a natural stream from its accustomed channel
and causes them to flow upon the lands of his neighbor, is liable for
the resulting damages, irrespective of any question of negligence
or malice. It is sufficient in such case if plaintiff prove that the act
was wrongfully done and that he was damaged thereby.

3. ———: ———: ———. The fact that defendant may in good faith
have believed that it was necessary for the preservation of its own
property to cut a dike and change the course of a natural stream is
no defense to an action for damages where the effect of its act was
to injure the lands of plaintiff, a lower riparian owner.

APPEAL from the district court for Nance county:
A. M. POST, JUDGE. *Affirmed.*

*J. W. Rice* and *Rose & Doyle,* for appellants.

*N. D. Burch* and *G. N. Anderson,* contra.

Heard before MORRISSEY, C. J., ALDRICH and GOOD, JJ.,
BEGLEY and BUTTON, District Judges.

BEGLEY, District Judge.

Action by plaintiff to recover damages on account of
the wrongful act of defendant in diverting the waters
of the Cedar river from its former channel onto and over
plaintiff's land. Plaintiff prevailed, and defendant ap-
peals.

Defendant owns and operates an electric light plant
at Fullerton, Nebraska, and, prior to the acts complained
of by the plaintiff, part of the power used for supplying
electricity was obtained from the Cedar river by means
of an ordinary dam and turbine wheel. In its natural

course the Cedar river comes down from the northwest to near the north line of the town of Fullerton. It then describes a sweeping loop to the north and, making a horseshoe bend, flows back directly south for over one-half a mile, passing the northeast corner of the town and veering to the southeast toward the Loup river. The property of the defendant is located within the peninsula formed by the north bend of the river, it being about three-fourths of a mile around the loop and about one-fourth of a mile across the neck. Defendant maintained a dam across the river near the point where it begins its swing to the north, and a millrace has been cut across the intervening neck of land from the dam to connect with the river on the east at a point directly opposite the northwest corner of plaintiff's land, which lies on the east side of the river at this point. The water from this millrace is used to operate the wheel in connection with the power plant of the defendant. The flume, wheel-house and wheels are located on this millrace about 150 feet west of plaintiff's land, and the power-plant is located about 30 feet south of the flume.

In September, 1919, the water being somewhat above its natural stage and under the pressure, the water began to escape from the south of the flume and between it and the dike. This endangered the power-plant and threatened its destruction. The defendant, through its employees, Greer and others, began combatting the escape of the waters, and being unable to do so, in order to save their own property from destruction decided to open a part of the restraining dike on the north side and permit the waters fo escape on that side. A small channel was cut on the north side of the dike permitting the waters to escape, and in a very few hours this so enlarged that a channel had been cut 30 or 40 feet wide on that side, and the river had forsaken its old channel around the loop and flowed directly through the millrace and entered the river again at right angles at a point near the northwest corner of plaintiff's land.

Plaintiff, as owner of 7½ acres of land bordering on the east side of the river and opposite where the millrace connected with it, brought this action alleging that, by reason of the defendant's wrongful act in turning the channel through the millrace instead of permitting same to go around the bend, sand-bars were formed in the old channel of the river to the northwest of plaintff's land, thereby obstructing the flow of waters therein in flood time, and that thereafter on three different occasions, in 1920, heavy rains caused the Cedar river to rise to flood stage, and that by reason thereof the lands of plaintiff were flooded and damaged, his crops were destroyed and live stock drowned. This was denied by defendant.

The case was tried to a jury, and the court instructed the jury that it was undisputed that the defendant Greer by direction of his codefendant cut or opened the bank or dike at the lower end of the millrace, thereby diverting the water of said stream from its natural channel onto and over the plaintiff's land, and that such was a wrongful act for which the plaintiff was entitled to recover at least nominal damages. Defendant alleges that this was error, and that the defendant was entitled to have two questions submitted to the jury, viz: (1) Was plaintiff's injury caused by the action of defendant? (2) Was such action negligent?

The evidence shows that defendant changed the course of the river, greatly shortening it; that the bend of the river was thereafter filled up to nearly a level with the banks as they formerly existed; that the bed of the river below was filled to a depth of from two to four feet; that plaintiff's land had not been subject to overflow before, but that the first flood of the river thereafter his land was overflowed, and this was repeated at each subsequent rise of the river, although the river did not leave its banks at other points. Some effort was made by defendant to show that there had been some change in the grades of the streets of Fullerton, and in the railroad

bridge and embankments, which might have caused the overflow, but these changes were shown to have been made more than four years prior to defendant's acts, and, although the river had been as high as in 1920, no overflow had occurred on plaintiff's land. The only overflows that did occur were caused by the breaking of a dam at Erickson several years ago. Defendant changed the course of the river in such manner that, whereas it formerly flowed past plaintiff's land from north to south, when changed, it flowed east and west directly against plaintiff's west bank and at right angles thereto, the course of the stream was greatly shortened, thereby accelerating the flow of the water, and the undisputed evidence shows this caused the banks to wash away and the land to overflow. The court was therefore right in instructing the jury that the act of the defendant caused the damage, if any.

Appellant contends that there can be no recovery without first showing that the act of defendant was negligent, and that it was error for the court not to submit that question to the jury, and has cited cases holding that, where a dam is constructed by proper authority, the owner is not liable for damages caused by breakage thereof or seepage therefrom, unless it is proved that the dam has been negligently constructed or maintained. This rule may be conceded. However, this is not a case based on any negligent act of construction of maintenance of defendant's dam, but is one based on the wilful, wrongful act of defendant in cutting the dike and thereby changing the channel of the river and discharging a large volume of water into the river at right angles to plaintiff's land. The cutting of the dike and the changing of the river was the wrongful act, something defendant had no legal right to do, and no matter how skilfully it was done or what degree of care was used in the operation, or that defendant in good faith believed the act necessary for the preservation of its own property, it cannot be urged in defense of this action. It

is sufficient if plaintiff prove that the act was wrongfully done and that he was damaged thereby.  "Irrespective of any question of negligence or malice, a riparian owner who, by his wilful act, diverts the waters of a natural stream from its accustomed channel, and causes them to flow upon the lands of his neighbor, is liable for the resulting damages." 27 R. C. L. 1094, 1096, sec. 32. See *Hartshorn v. Chaddock*, 135 N. Y. 116; *McKee v. Delaware & Hudson Canal Co.*, 125 N. Y. 353; *Southern R. Co. v. Lewis*, 165 Ala. 555; *Kane v. Bowden*, 85 Neb. 347; *Kay v. Kirk*, 76 Md. 41, 35 Am. St. Rep. 408; *Hulme v. Shreve*, 4 N. J. Eq. 116; *Valley R. Co. v. Franz*, 43 Ohio St. 623; *Briscoe v. Young*, 131 N. Car. 386.

Complaint is made as to the excessiveness of the recovery.  The evidence of damages all comes from the plaintiff's witnesses, and was not controverted by defendant in the lower court.  The amount found by the jury is within the range of the testimony.

No error being found in the record, the judgment is

AFFIRMED.