James O’Brien, J.
On or about August 24, 1956, the defendant, while engaged in construction work upon a highway in Weedsport, damaged plaintiff’s home. Defendant had been removing a tree stump with a stump-puller and a bulldozer, and in doing so pushed part of the sidewalk under a corner of the house, lifting up that corner and twisting the house about, and dislodging it from its foundation. Defendant upon the *808 trial conceded its negligence and liability. There remained as the only question for determination the amount of damage to which the plaintiff is entitled.
The house is a two and one-half story dwelling about 100 years old, but somewhat modernized. Major improvements were recently made throughout the house and these were described upon the trial. The plaintiff is a widow; she has owned the house for about 43 years and has lived in it all during that time. Her husband died in 1951 and since then she has resided there alone.
The lot is small, approximately 32 feet by 45 feet. Downstairs there are a large living room, a kitchen, dining room and two closets; upstairs three bedrooms, one bath and a large hall. There is an attic over the entire second floor. There is no cellar.
On November 7, 1956 the adjuster for defendant’s insurance carrier talked to plaintiff and asked her to secure and give to him an estimate of the cost of repairing the house. She did so. The contractor who made the estimate was a witness upon the trial and said that in December, 1956 he inspected the property and reported that the cost of repairing the damage to the house and the sidewalk was $3,250. Plaintiff turned over that estimate to the adjuster in the latter part of December, 1956 or the early part of January, 1957. He made no offer of compromise immediately. The summons and complaint were issued and served upon the defendant. Somewhat later, viz.: in August of 1957, the adjuster offered, on behalf of the defendant, to pay plaintiff $3,250 in full of her damage. However the damage was progressive, and by August, 1957, when plaintiff received that offer, the condition of the house had grown substantially worse, the floors had more of a sag in them, the ceilings seemed to have lost their support, the house was more greatly twisted; it had fallen over further to one side and the damage was more severe. The cost of repairing it in August, 1957 was found to be $8,694. At the time of trial (Oct., 1957) a competent contractor said it would cost $9,600 to $9,700 to put the house in the condition in which it was before the accident. None of these estimates made in December, 1956, August, 1957 and October, 1957 was disputed.
One of the contractors testified that in his opinion the fair market value of the house before the accident was approximately $7,000. Plaintiff’s son, who had lived in the village of Weedsport for 21 years, and has been the Mayor of the village for some years past, testified that in his opinion the house was worth between $7,000 and $7,500 before the accident. Everyone *809 who was interrogated on the subject agreed that the cost of putting the house back into the condition it was before the accident would substantially exceed its market value.
The only evidence as to the present value of the house was given by Mr. David Coyle, plaintiff’s son, and Mr. Albert Bibbins, a contractor. Coyle said that the house had no value in its present condition; that it could not be sold. He said that in the small community of Weedsport everyone knew that the house had been damaged and that even though some repairs were made, no one would buy it because if its reputation for having been damaged. The other witness, Bibbins, testified that in his opinion the house had some value at the present time. He admitted that he had never known of any house in a similarly damaged condition having been sold. Therefore he was not qualified to express any opinion as to its market value. However, he went on to testify that the house could be cheaply repaired for habitation; that such repairs would cost around $3,500, and that the house in his opinion could then be sold for from $6,000 to $6,500. He admitted that if such repairs were made they would be inadequate and that he would not buy the house nor would any discriminating person buy the house. He also went on to say that after the making of such repairs as he contemplated, the floors would still sag and would not be level and that the house would still be in an obviously damaged condition and that the number of prospective buyers for a property of this sort would be very limited.
Both counsel concede that the plaintiff’s recovery may not exceed the market value of the house. (Hartshorn v. Chaddock, 135 N. Y. 116, 122; Gass v. Agate Ice Cream, 264 N. Y. 141, 143.) It will be remembered that the market value of the house before the accident was $7,000 or $7,500, or some amount between those two figures.
Defendant’s contention that the damages should be limited to $3,250 on the ground that that amount had been offered unconditionally by the carrier of defendant, to the plaintiff, is overruled.
The defendant’s offer of that figure was not made until August, 1957 and by that time the damage had so increased that the cost of repairs would exceed the offer and even the value of the house. At that time, therefore, plaintiff was justified in declining to accept the $3,250 in full settlement of her damage.
I was not impressed with the validity of the opinion of Mr. Bibbins that if some cheap and inadequate repairs were made, the house could be made habitable, although the floors would *810 still sag and other evidences of damage would still exist, and that the house could be marketed then for $6,000 to $6,500. I reject that opinion as one which the witness was not qualified to express. I do not think it is realistic. It would be unreasonable to expect anyone to spend $3,000 or $3,500 on the project of making make-shift repairs with no assurance, whatever, of being able to market the property after the money had been expended. In a small community of that kind it would seem to me that unless the house were put back in a condition approximately as it was before the accident, it would not be saleable at all and had no market value. This was the opinion expressed by the plaintiff’s son, David Coyle, the Mayor of the village where the house is located. I accept his opinion and find it to be the fact.
It may be that there is some salvage value in the material in the house. Nobody offered any proof as to such value. Since neither party offered such proof, although they could have done so, they must be deemed to have waived the necessity of further evidence on the question of damage. (Hartshorn v. Chaddock, 135 N. Y. 116, 123, supra; Union Course Holding Corp. v. Tomasetti Constr. Co., 184 Misc. 382, 386, affd. no opinion 269 App. Div. 775, affd. 295 N. Y. 802.)
Defendant urges that since plaintiff made no attempt to minimize her damage by making repairs to the house within a reasonable time after the accident occurred, defendant’s liability should be limited to the cost of making repairs as per the estimate of December, 1956, viz.: $3,250. Plaintiff’s excuse for not making repairs was that she had no funds for that purpose.
The effort which one is obliged to make to avoid or mitigate the consequences of another’s wrongful act, need only be reasonable under the circumstances of the particular case. (25 O. J. S., Damages, § 33, p. 501.) The evidence shows that the plaintiff did not realize that the damages would progressively increase and there is some expert testimony to the effect that it was by no means certain that they would increase, although in fact they did. Accordingly there was no assurance to the plaintiff in December, when she had the first estimate made, that unless she made repairs immediately the damage would become more severe. Moreover, she had no funds with which to pay for repairs. Accordingly, she was not required to take steps to minimize the damage. (1 Clark on New York Law of Damages [1925 ed.], § 109; O’Neill v. New York Ontario & Western Ry. Co., 34 Hun 458, affd. 115 N. Y. 579.)
*811 Were not the law settled to the contrary, a strong argument could be made to the effect that plaintiff should have the right, at her election, to put her dwelling back in the condition it was before the defendant’s wrongdoing damaged it, and that the entire cost of doing so should be paid by the defendant. This would be as of the date of trial, from $9,600 to $9,700. Unfortunately for the plaintiff the law is to the contrary (Hartshorn v. Chaddock, 135 N. Y. 116, 122, supra) and plaintiff may not recover the cost of repair. Accordingly, if the plaintiff should elect to cause her house to be repaired and spend therefor $9,600, her recovery, nevertheless, must be limited to the market value of the property. However, in my opinion, she should recover in full the difference between the market value before the accident, which I find to be the sum of $7,000, and its value after, which I find to be nothing. Accordingly, judgment is directed in favor of plaintiff and against the defendant for the sum of $7,000, with costs.
Since this decision in effect grants a motion of the plaintiff in her favor for judgment in the sum of $7,000, and contains a statement of the facts found by the court which it deems essential to its decision, it constitutes the decision of the court as required by section 440 of the Civil Practice Act.