Dorothy E. Kent, J.
Probably long before -the walls of Jericho came tumbling down simultaneously with the blast of hundreds of trumpets in early Biblical times, parties with vested interests in damaged walls have argued as to the cause of their falling and have often blamed the actions of their neighbors on adjoining lands for their damage. And down through the centuries, especially in the" last 100 years with increased urbanization, many cases, some quite interesting in their quest for equity, have been decided concerning walls of all kinds.
And now, in the beginning of the seventh decade of the 20th century, well enmeshed in ever expanding urbanization, the *550 court has before it this case. The plaintiff, Catherine May, is the administratrix of the estate of Hugh May, deceased, who was the owner since 1959 of property on which stands a one-family, two-story stucco house in which he and his family resided, and which premises are designated as 2841 Sedgwick Avenue in the County of The Bronx.
The defendant, 229 Development Corp., from June 19, 1962 up to and including March 28, 1963 owned certain lands known as 2829 Sedgwick Avenue, Bronx, New York, which lands, being “ L ” shaped, adjoined the plaintiff’s property on its southerly and westerly boundaries. For some years prior to March 28, 1963, according to the plaintiff’s testimony, there stood in good condition, a retaining wall on the westerly boundary of 2841 Sedgwick Avenue and partially on 2829 Sedgwick Avenue, the defendant’s property. The plaintiff’s witness testified that the retaining wall gave lateral support for the land on her premises.
As was its right, the defendant had, or caused to be, erected an “L ” shaped building which fronted on Sedgwick Avenue and extended in back of plaintiff’s property. In order to erect this building from June 19, 1962 to March 28, 1963 the defendant, his agents, servants, or contractors excavated, drilled, and blasted on the 2829 Sedgwick Avenue property to a depth of more than 15 feet and up to the retaining wall without taking any precautions to protect the .said wall. The wall collapsed on March 28, 1963, admittedly some months after the excavation and blasting on defendant’s property was completed. The plaintiff contends that the collapse of the wall was caused solely by the negligent blasting and excavation by the defendant or its agents, which the defendant denies, its witness stating the collapse was caused by the natural erosion and shifting of the soil.
Section C26-384.0 of the Administrative Code of the City of New York provided: ‘ ‘ C26-384.0 Excavations affecting adjoining property.— a. Temporary support of adjoining property. — Any person causing any excavation to be made shall provide such sheet piling and bracing as may be necessary to prevent the earth of adjoining property from caving in before permanent supports have been provided for the sides of such excavation.” Section C26-385.0 of the Administrative Code of the City of New York provided in part that, whenever an excavation is carried to more than 10 feet below the curb, the person causing the excavation shall preserve and protect any structure the safety of which may be affected by such part of the excavation as extends more than 10 feet below the curb.
*551 The plaintiff’s witnesses’ uncontradicted testimony was that, in violation of these sections of the New York City Administrative Code, no protection or support was afforded the retaining wall even though the excavation was beyond 10 feet in depth. Mr. May, the brother of the plaintiff and son of the owner of the premises at the time the wall collapsed, also testified that at his father’s request he had protested to the defendant or its agents or servants on several occasions while the blasting and excavating were in progress that they were endangering the wall.
The collapse of the wall, however, did not occur for some months after the excavation was completed. Can, therefore, the collapse of the wall be imputed to the defendant’s negligence í There was testimony on the plaintiff’s behalf that the retaining wall had stood in condition for many years — exact number no one knew. The plaintiff’s witness, Mr. Baker, an engineer who qualified as an expert of several years ’ experience in constructing retaining walls, testified that retaining walls of the composition and construction of this instant one stand for hundreds of years if undisturbed by unnatural causes such as blasting and excavating. He further testified that excavating the earth near the wall could cause it to be weakened and to collapse at a later period as in the instant case.
In Bernheimer v. Kilpatrick (53 Hun 316, 319, affd. 127 N. Y. 672) it is stated: “It is a duty imposed upon the adjoining builder to so protect the adjoining wall, if he goes more than 10 feet below the level of the curb, that such wall shall not be injured by reason of the structure which he has put in the excavation after it is made, because the provision of the law is that the foundation of adjoining house must be supported in such manner that it shall remain as stable as before the excavations were commenced.”
And in the same case it is further stated (p. 320): “It was impossible to produce witnesses who could swear that they had seen the excavation, and had seen that as a result of the excavation the foundation of the adjoining house settled, and cracks appeared. We think that it is a reasonable conclusion that the jury might very well draw from the showing that the house had been erected for a number of years; that it stood without settling; that an excavation to an immense depth was made alongside of it, and very shortly after the walls began to crack, and the house perceptibly settled towards the excavation. It hardly seems necessary to have any more definite proof in order to justify in finding a connection between the excavation and the settlement of the house in question.”
*552 Therefore, in the instant case the court finds that the collapse of the plaintiff’s retaining wall and the consequent damage to her property were caused by the defendant’s excavation and by its not taking proper precaution to support the wall in such manner that it remained as stable as before the excavation was commenced.
But what is the amount of the plaintiff’s damages 1 Damages, generally, are held to be the diminution in value of plaintiff’s property because of defendant’s negligent actions or the cost to restore it, whichever is less. (Riley v. Continuous Rail Joint Co., 110 App. Div. 787.)
In the instant case the plaintiff’s witness, Mr. Baker, the engineer qualified as an expert with years of experience in building and repairing retaining and other walls, testified that becaus'e of the difficulty in bringing equipment and material through the now constricted area, the cost to reconstruct the wall in 1966 (some three years after collapse of wall) would be $14,800; his design and fee an additional $1,500; and replacing the destroyed landscaping another $3,700, or a total of $20,000. He conceded on cross-examination that if the wall were constructed in 1963, when it collapsed, the cost would probably have been 20% less to construct or $11,840, plus his fee and landscaping for a total of $17,040.
No testimony was given by 'either the plaintiff or defendant to show the diminution in value of the premises because of the defendant’s negligence. To give the court some indication of the general value of the property, testimony was permitted over the plaintiff’s objection to show that the premises were purchased in 1958 for $17,500.
In Levine v. City of New York (249 App. Div. 625) the court stated in part: “In an action for damages for deprivation of lateral support, negligence, and breach of contract, judgment for defendants dismissing plaintiff’s complaint .reversed on the law and the facts and a new trial granted. In our opinion the proof of cost of .restoration was competent and constituted a prima facie showing of damages. By offering such proof rather than following the alternative method of showing diminution in value, the plaintiff necessarily implied that such cost is lesser in amount.” Also, Hartshorn v. Chaddock (135 N. Y. 116). Union Course Holding Corp. v. Tomasetti Constr. Co. (184 Misc. 382) holds that, where no proof of depreciation in valu'e is given, plaintiff’s uncontradicted proof of reasonable cost of necessary repairs is the amount the court should award as damages.
*553 It is reasonable to assume in the instant case that in accordance with Levine v. City of New York (supra) the diminution in value of the plaintiff’s premises would be less than the estimated 1963 reconstruction cost of $17,040. The court is aware, too, that the plaintiff had and has the right to enjoy her property in toto and because of the deprivation of this right through the negligence of the defendant she should recover damages. Nevertheless, the facts remain that only the .retaining wall and several feet of the plaintiff’s property were destroyed; that the house in which plaintiff still resides, and the greater portion of the property remain intact.
Therefore, in the court’s opinion (unlike Union Course Holding Corp. v. Tomasetti Constr. Co., supra, where the building was damaged), to award the plaintiff $17,040, the estimated cost of construction, even if reduced to the $10,000 maximum of this court, might well be a miscarriage of justice, since this amount bears so high a ratio to even the highest conceivable present-day estimated valuation of the premises, the essential and major portion of which, as stated above, was left intact. And, too, to fix a lesser amount for the damages sustained by the plaintiff without more facts to base it upon would also be merely speculative.
Therefore, while the court finds that the damages to the plaintiff’s property were caused by the defendant’s negligence, the case is set down for an assessment of damages.