ENID AND ANADARKO RAILWAY COMPANY v. JOSEPH W. WILEY, CHARLES HATJE, ED. GILLESPIE, A. A. McGREGOR AND GEO. C. BOLIN.

(Filed September 2, 1904.)

1. PRACTICE—Objections to Evidence, When Not Sufficient. When the record of a patent to land is offered in evidence for the purpose of showing title in the patentee, a general objection that it is "incompetent" will not be sufficient to present the objection that no proper foundation has been laid, by showing that the original was not in the possession or under the control of the party offering the record in evidence.

2. EVIDENCE—Objections to, Must Specifically Point Out. Objections to the introduction of evidence, to be available in the appellate court, must specifically point out the grounds of objection at the time objection is made, to the end that the court may be advised of the grounds for the objection, and the adverse party given an opportunity to cure the objection.

3. EVIDENCE—Objection—"Incompetent" too General. An objection that offered evidence is "incompetent" without specifically stating the grounds upon which objection is based, is too indefinite to present any question to the trial court and will not be considered on appeal.

4. TRESPASS TO REAL ESTATE—What Constitutes—How Damages are Recovered. When a railway company under color or pretense of proceedings to condemn lands for public use, enters upon such lands and constructs embankments, excavates ditches, and

tears up and removes the soil during the pendency of such proceedings, the right given by sections 1040 and 1041, Wilson's Statutes, is a license which becomes lost, and is revoked by the subsequent dismissal of the proceedings and abandonment of the claim for right of way, and thereupon the railway company becomes a trespasser ab initio, and in such case the land owner may maintain an action for damages, and is not restricted to the remedy of the writ of Ad quod damnum given by the statute.

5. **PRACTICE—Dismissal of Proceedings—Estoppel.** One who institutes and sets in motion proceedings to condemn a right of way for railway purposes under the power of eminent domain, and after having done a large amount of work on the land, voluntarily dismisses the proceedings, abandons the work and withdraws the condemnation money, will not, when sued by the land owner for damages, be heard to say that such dismissal was ineffectual, and that the land owner should be required to have his damages assessed in the condemnation proceedings. The law will not permit a party to gainsay his own acts to the detriment of the adverse party, even though such acts are not valid.

6. **TRESPASS TO REAL ESTATE—Measure of Damages.** The cost of restoring land to its former condition is the proper measure of damages for injury thereto when such cost is less than the diminution in the market value of the whole property by reason of the injury, but if the cost of restoring is more than the diminution in market value, the latter is generally the true measure of damages.

(Syllabus by the Court.)

*Error from the District Court of Blaine County; before James K. Beauchamp, Trial Judge.*

*M. A. Low, C. O. Blake, E. E. Blake, W. F. Evans, John Livingston,* for plaintiff in error.

*William O. Woolman,* for defendants in error.

STATEMENT OF FACTS.

The Enid and Anadarko Railway Company instituted proceedings in Blaine county, Oklahoma, to condemn a right of way for its railroad over and across the southwest quarter of section number one (1), township thirteen (13) north, range eleven (11) west of the Indian Meridian. Apprais-

ers were apointed and made their report assessing the damage to the owners of the land at six hundred dollars. The company deposited the amount of the award with the clerk of the district court in Blaine county. The land owners refused to accept the award, and filed a demand for a jury trial. Pending these proceedings the railway company entered upon the land, constructed a high embankment for its roadbed, excavated wide and deep ditches and pits, removed the soil and otherwise dug up and disfigured about sixteen acres of said tract. After doing this work with the purpose of constructing and operating its line of railway across the land, the company made arrangements for using other property, and abandoned its purpose to use or appropriate any portion of this tract for railway purposes. It also filed a written dismissal of its proceedings to condemn, with the clerk of the district court, and withdrew its deposit of condemnation money, and discontinued and abandoned all proceedings had in said matter.

The land owners then instituted an action for damages to the land, and set up the acts done by the railway company on the land, the condition it was left in, its unsuitableness for agricultural or other purposes, and the abandonment of the right of way and all claim to the land by the railway company. The railway company filed a general denial of the alleged acts of trespass, and the alleged damages.

The case was tried by a jury, and a verdict returned and judgment rendered against the railway company for the sum of fifteen hundred dollars damages. Motion for new trial was filed and overruled, and the case is brought here by the railway company for review.

Opinion of the court by

BURFORD, C. J.:    Three questions are presented and re-
lied upon by counsel for plaintiff· in error, and we will con-
sider and determine them in their order.    It appears from
the record that the plaintiffs in support of their allegations
of ownership of the land in controversy introduced the reg-
ister of deeds of Blaine county as a witness, and had him
produce and identify a record of that office kept and known
as the patent record.    This record contained a record of
the patent for said land from the United States to one of
plaintiffs in this case.    The plaintiffs offered in evidence
the record of this patent.    The defendant objected to the
record upon the ground that it was "incompetent," and the
court overruled the objection, and the record was read in
evidence.

By sec. 4575, Wilson's Statutes, 1903, it is provided:
"The books and records required by law to be kept by any
probate judge, county clerk, county treasurer, register of
deeds, clerk of the district court, justice of the peace, police
judge or other public officers, may be received in evidence
in any court; and when any such record is of a paper, doc-
ument, or instrument authorized to be recorded, and the
original thereof is not in the possession or under the control
of the party desiring to use the same, such record shall have
the same effect as the original; but no public officer herein
named or other custodian of public records, shall be com-
pelled to attend any court, officer or tribunal sitting more
than one mile from his office, with any record or records
belonging to his office or in his custody as such officer."

In order to comply with this statute before admitting
the record of the patent in evidence, the court should have
required the plaintiffs to make preliminary proof that the

original patent was not in their possession or under their control. But the plaintiffs in error are in no position to avail themselves of this error. Appellate courts will not, as a general rule, consider objections to the introduction of evidence unless such objections are made to the trial court at the time the testimony is offered, and must be sufficiently certain and definite to advise the court of the specific grounds of objection. To say that evidence is "incompetent" is too general, vague and indefinite. In the case under consideration, the record of the patent was competent as secondary evidence, and secondary evidence was admissible if the original was not in the possession or under the control of the party offering the record. No objection was made that the proper foundation had not been laid for the introduction of secondary evidence, nor was it suggested that the record was not admissible until the parties offering it had made proof that the original could not be produced. The court was not advised upon what grounds it was "incompetent," and it was not bound to grope through the entire scope of possible defects to ascertain the foundation for this objection. It might have been incompetent because not properly executed by the president; because not properly attested by the great seal; because not properly recorded in the general land office; because not properly authenticated, because it did not describe the land in controversy, or because executed to some person other than those claiming the land in dispute, or the record might have been incompetent because not properly identified, or because not properly kept, or because it was not required by law to be kept, and the court was not bound to seek a basis or ground to support the general objection

of incompetent. It is the duty of counsel when making an objection to state the grounds of the objection so that the court may act advisedly and intelligently upon the objection presented, and that the adverse party may have an opportunity to obviate the objection, if possible, and make the evidence admissible.

An objection that evidence offered is "incompetent" without specifically stating the grounds upon which the objection is founded, is too indefinite to present any question, and will be disregarded. (*Crawford et al. v. Witherbee et al.*, 77 Wis. 419; *Harvey v. Huston*, 94 Ind. 527; *Mills v. Winter*, 94 Ind. 329; *Lake Erie & W. Ry. Co. v. Parker*, 94 Ind. 91; *McClellan v. Bond*, 92 Ind. 424; *Jones v. Angell*, 95 Ind. 376; *Stanley v. Sutherland*, 54 Ind. 339; *I. B. & W. Ry. Co. v. Cook*, 102 Ind. 133, 8 Enc. Pl. & Pr. 218; *State v. Moore*, 117 Mo. 395; *State v. Smith*, 114 Mo. 406; *State v. Harlan*, 130 Mo. 381; *Bennett v. Greene*, 74 Cal. 425).

It follows from what we have said that it was error for the court to admit in evidence the record of the patent, until the preliminary proof had been made that the original was not in the possession or under the control of the plaintiffs. But inasmuch as the objection to the introduction of the record was not presented to the trial court in such manner as to make this ruling available, such error will be disregarded by this court.

It is next contended by plaintiff in error that the plaintiffs below cannot maintain this action, for the reason that the statute provides a mode for determining the compensation for the land owner for lands taken under the power of eminent domain, and that such remedy is exclusive. We

do not deem it necessary in this case to determine whether the statute prescribes an exclusive or a cumulative remedy. The plaintiff in error is in no position to urge this objection. The company instituted condemnation proceedings under the statute, and had it in its power to confine the remedy to such proceedings, but after it had done all the damage complained of, it voluntarily dismissed its proceedings, withdrew the deposit of the award, abandoned the land, and in so far as it could by its own acts, left the land owners without any standing in court under such proceedings, and they will not now be permitted to gainsay their own acts to the detriment of the adverse parties. If the company had taken the land in dispute, or had perfected its right of way, or had appropriated its easement over the land, then the case would come within the rule laid down in some of the cases cited by plaintiff in error to support their contention. But this is not an action to recover an award made by a court or commission under the power of eminent domain, nor is it an action to recover damages for land taken, or right of way appropriated, under the power of eminent domain. It is not an action to recover for injuries determinable under a statute providing for awarding compensation for lands taken for public uses. It is true the injury complained of was done under a pretense of taking the lands for railway purposes, but having abandoned the right of way and discontinued the proceedings after having, under the license conferred by the statute on eminent domain, committed the acts constituting the injury complained of, it thereupon became a trespasser *ab initio*. (*Cherokee Nation v. Northern Kansas Ry. Co.* 135 U. S. 641; *Pittsburg, Ft. W. & C. Ry.*

*Co. v. Swinney,* 97 Ind. 586.)   By the dismissal of the proceedings under the statute, the abandonment of the land after committing the injuries alleged, and withdrawing the deposit for damages, the license conferred by secs. 1040 and 1041, Wilson's Statutes, was lost and revoked, and acts of trespass relate back to the time of the injuries done.   Under these circumstances the railway company was a trespasser at the time it did the acts constituting the injury to the land, and the law furnishes the land owner a remedy to recover his damages for such injuries.   (*Van Valkenburgh v. Milwaukee,* 43 Wis. 574).   The statute providing that railroads may exercise the power of eminent domain, only provides for the assessment of damages and award of compensation to the land owners, where land is *taken* for right of way or for railway purposes, and makes no provision for determining the damages to be paid for injuries done to lands not taken, or appropriated where no portion of the lands are taken. The plaintiffs below are seeking to recover damages for injuries done to lands not taken or appropriated, and the action of trespass to real estate is, under the facts alleged and proved, a proper and appropriate remedy.   The railway company having by its subsequent conduct lost its license to dig up and injure the lands applied for by it, was a wrongdoer from the inception, and is liable in damages for the injuries done to the land.

In such cases the land owners may maintain an action for damages, and are not restricted to the remedy by writ of *ad quod damnum* given by statute where lands are actually appropriated.   (*Pittsburgh, Ft. W. & C. Ry. Co. v. Swinney,* 97 Ind. 586; *Lake Erie & W. Ry. Co. v. Kinsey,* 87 Ind. 514;

*City of Chicago, v. Barbian,* 80 Ill. 482; *Lee v. N. W. Union Ry. Co.* 33 Wis. 222; *Malcolm v. Spoor,* 12 Met. 279; *Stone v. Knapp,* 29 Vt. 501.)

The next contention urged presents the question as to the measure of damages in this class of cases. The authorities are not harmonious as to what is the proper measure of damages in cases of trespass to real estate. Some courts hold that the true and only rule is the difference in value to the whole tract before and after the injury. Others hold that the cost of restoring the land to its original condition is the true measure of damages, while another class holds that neither rule is inflexible, but that the extent and nature of the injuries must determine the rule as to the measure of damages, and that the amount of damages must in no event be in excess of the diminution in value occasioned by the injuries complained of. The trial court admitted evidence of the value of the sixteen acres originally included in the company's right of way, and also of the cost of removing the embankments made by the railway company, and of restoring the land to its original condition, but excluded the evidence as to the value of the entire tract both before and after the work was done. The measure of damages as fixed by the trial court is stated in the charge to the jury. Instruction No. 3 is as follows:

"You are further instructed that the measure of damages in this case will be the cost of placing the land in question back in the condition it was before the said defendant, The Enid and Anadarko Railroad Company, entered upon said land. Providing, if you find from the evidence that the cost of putting the same back does not exceed the value of the land together with the damages caused to the adjacent

land in said quarter section belonging to the plaintiffs, except the fifty acres to which plaintiffs claim no damage. But if you should find from the evidence that the cost of putting the said land back in the condition it was prior to such entry of the Enid and Anadarko Railroad Company, together with the damage to the said adjacent land, exceeds the value of the land, you are instructed that the measure of damages will be not to exceed the value of said land, together with the damages to said adjacent land heretofore mentioned in this instruction. Provided, that you find that such difference is caused by the acts of the defendant complained of in the petition."

This instruction was given and excepted to at the time. Evidently under this instruction and the evidence the jury had no discretion to fix the damages at less than the value of the land originally included in the right of way. It could not do otherwise, for in other portions of the instructions the court informed the jury how much land was affected by the attempt to condemn, and by the construction of the railroad improvements, and the evidence clearly showed that the cost of restoring the land would be largely in excess of the actual value of the land before it was entered upon by the railroad company. The court in its instruction limited the recovery to the cost of restoring the land, provided such cost was not in excess of the value of the land sought to be taken. The doctrine of the instruction is supported by *Lentz v. Carnegie,* 145 Pa. St. 612, and possibly by some other decisions, but we do not think the value of the land sought to be taken and upon which the injuries are committed should be the test of the limit of recovery. This rule may well be applied where the land is actually taken. The measure of damages as stated in Sedgwick on Damages,

8th ed. sec. 939, is the cost of restoring the land to its for-mer condition, with compensation for loss of it, if this al-together is less than the diminution in value of the land with the injuries left standing. This is on the principle that if the cost of repairing the injury is greater than the diminution in market value of the land, the latter is the true measure of damages, the rule of avoidable consequences requiring that in such case the plaintiff shall diminish the loss as much as possible.

This rule as to the measure of damages is supported by the greater weight of authority, and seems reasonable, just and equitable. One of the best considered cases upon the subject of the measure of damages in cases of injuries to real estate is that of *Hartshorn v. Chaddock,* 135 N. Y. 117, 17 L. R. A. 426. Mr. Justice O'Brien states and con-siders the various rules applied by different courts for the determination of damages in cases of trespass, and arrives at this conclusion: "The rule seems to be that when the rea-sonable cost of repairing the injury, or, in this case, the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand when the cost of restoring is more than such dim-inution, the latter is generally the true measure of damages."

This rule seems to be unobjectionable, and to provide the land owners just compensation for the actual loss incur-red by the injurious acts done by the railroad company. To this should be added such sum as will compensate for the property during the time it was in the possession of the

company, if the plaintiffs were deprived of its use by the company. The rule here stated is not in conflict with the law as stated in *Norman v. Ince,* 8 Okla. 412, but is in harmony with that case. There was no question in *Norman v. Ince,* of restoring property to its former condition, and the rule is correct as applied to the facts there involved.

We think the rule for determining the measure of damages as stated by the trial court is erroneous, and not supported by reason and sound authority. On the trial of the issues made by the pleadings, the evidence as to the amount of damages should be confined to the cost of restoring the land to its former condition; also to the reasonable market value of the entire tract affected by the injuries, both immediately before the doing of the injurious acts, and immediately after, and if the diminution in value caused by the work done by the railway company is less than the cost of restoring the land, then such diminution is the true measure of recovery for the permanent injury to the land. On the other hand, if the cost of repairing the injury, or of restoring the land to its former condition is less than the diminution in value, then such cost is the measure of recovery for such injuries. To this sum, when determined, may be added such sum as will reasonably compensate for the loss of the use of the portion injured during the time the railway company deprived the owners of its use.

Counsel for defendant in error admits in his brief that the rule as stated in *Hartshorn v. Chaddock* is the true rule for measuring the compensation in this class of cases, but insists that the instructions given by the trial court are in harmony with such rule. We are unable to reconcile the

two propositions. If the rule herein stated is correct, then evidently the instruction given was erroneous, and for that reason the judgment must be reversed.

The judgment of the district court of Blaine county is reversed, and the cause is remanded, with directions to the trial court to grant a new trial, and proceed according to the views herein expressed.

Beauchamp, J., who presided in the court below, not sitting; Pancoast, J., dissenting as to the third paragraph of the syllabus; all the other Justices concurring.