HAMILTON BUILDING COMPANY, Plaintiff, *v.* RAPID TRANSIT SUBWAY CONSTRUCTION COMPANY and CITY OF NEW YORK, Defendants.

(Supreme Court, New York Trial Term, February, 1918.)

Damages — liability for — measure of — contracts — evidence — trial — verdict.

As a result of subway construction the walls of plaintiff's building on their several fronts settled, in varying degrees, structural cracks developed in walls and roof and the floors were cast out of level. In an action for damages brought against the subway contractor, engineers and architects testified that the building could not be restored to the condition it was in before the construction of the subway was commenced. The subway contractor had agreed with the city of New York that it would be liable for any damage or physical injuries that might in the course of construction be done to any foundation walls, etc., and would do all additional and incidental work that might be necessary for the reconstruction and restoration of all overhead structures which might be disturbed or injured " to a useful, safe, durable and good condition as existed before construction shall have been begun." There was evidence as to the cost of building a similar structure but as, under the rule

28

laid down in *Hartshorn* v. *Chaddock,* 135 N. Y. 116, that could not legally be taken as a measure of damages, the depreciation in the market value of the property was taken as such measure. The undisputed testimony of experts, the only evidence available to plaintiff, was to the effect that there was serious depreciation in market value. *Held,* that to admit depreciation while withholding reasonable compensation would be a denial of justice.

That, as the sum fixed by the jury over and above that admitted by the defendant as due for repairs was grossly disproportionate to that established by the weight of evidence, the verdict should be set aside.

MOTION to set aside a verdict and for a new trial.

Van Zandt & Webb, for plaintiff.

James L. Quackenbush, for defendants.

GOFF, J.    In 1907 plaintiff purchased a ten-story building situated at Greenwich and Thames streets. It was erected in 1889, was massive in construction, designed for mercantile use, and its floors adapted for the operating of machinery. In 1914 the defendant entered into a contract with the city of New York for the construction of a subway by which it bound itself that independently of any question of negligence it would be liable for any damage or physical injuries that might in the course of construction be done to any foundation walls or other parts of abutting or overhead buildings, and that it would do all such additional and incidental work as might be necessary for the reconstruction and restoration of all overhead structures which might be disturbed or injured " to a useful, safe, durable and good condition as existed before construction shall have been begun." In January, 1915, construction began, in the course of which defendant proceeded to underpin the building, and in

doing so cut away the concrete footing or base of the foundation of the piers on which the building rested to an extent necessary to insert "fifteen-inch I beams," which should have been inserted under the concrete footing. As a result the walls of the building on their several fronts settled, in varying degrees structural cracks developed in walls and roof, and the floors were cast out of level. Engineers and architects testified that the building cannot be restored to condition as it was before construction of the subway was commenced. Since the building could not be restored there was no evidence as to the cost of restoration, but there was evidence that it would cost $355,500 to build a similar structure. This could not be taken as the measure of damage, and under the rule of *Hartshorn* v. *Chaddock,* 135 N. Y. 116, the depreciation in the market value of the property was adopted as the measure. On this three real estate experts respectively testified that in their opinion because of the damage done to building the property had depreciated in market value in the several amounts of $51,750, $45,225, $49,350. At the close of the plaintiff's case defendant admitted its liability for damage to the extent of $3,450, and by its witness gave testimony that that sum would meet the cost of repairs. There was no testimony given by the defendant as to restoration or its cost or as to depreciation of market value. In effect defendant contended that the building could be repaired at an expense of the sum admitted, while plaintiff contended that the building was irreparably damaged, and consequently its market value depreciated to the extent aforementioned. Assessment of damage between the sum admitted and the sum claimed was the only question submitted to and passed upon by the jury, which returned a verdict for $5,000. What the motive that influenced a jury in arriving at

its verdict may be is as inconsequential as it is conjectural, but from the verdict itself certain deductions may be drawn with legal accuracy. As from this verdict, if the jury believed that there had not been depreciation of market value, it would have found in the sum admitted by defendant as necessary for repairs, but having found in a larger sum it necessarily follows that it found there was depreciation. This was the only question for determination, and having been determined in the affirmative was the amount fixed ($1,550 difference between the $3,450 admitted and $5,000 verdict) fairly commensurate with the damage to the market value as compared with the testimony on the subject? Unquestionably the great weight of testimony was that the building had been seriously if not irreparably damaged, but because of the rule cost of restoration or reconstruction could not be recovered. The only recourse left was recovery for depreciation of market value, and on this question there was the undisputed testimony of experts that there was serious depreciation. This, under the circumstances, was the only competent testimony available to the plaintiff, and to admit depreciation while withholding reasonable compensation would be to him a denial of justice. While as a general rule a jury may accept or reject in whole or in part the testimony of experts, yet there may arise cases the peculiar nature of which depends solely or mainly on expert testimony, and where it stands unimpeached and uncontradicted to ignore it might work an injustice. There is a marked distinction between the line of cases in which deserved criticism was made on expert testimony because of its extravagance and speculative assertion and this case where the weight of testimony showed substantial, not theoretical, injury to property. While the verdict of a jury should ordinarily be regarded as

definite, yet there may be verdicts which through error or mistake or disregard of the evidence operate as an injustice. When such occurs, a duty devolves upon the court to exercise its discretion and set it aside to the end that as far as possible justice be attained. *McDonald* v. *Walter,* 40 N. Y. 551; *Barrett* v. *Third Ave. R. R. Co.,* 45 id. 628. Having found that because of the damage to the building the market value of the property had depreciated, the sum fixed by the jury over and above that admitted as due for repairs was grossly disproportionate to that fixed by the weight of testimony, and its verdict should be set aside and a new trial ordered.

Ordered accordingly.