HAMILTON BUILDING COMPANY, Respondent, v. RAPID TRANSIT
SUBWAY CONSTRUCTION COMPANY, Appellant.

First Department, January 16, 1920.

Damages — liability of subway construction company for damage
to adjoining premises and buildings thereon — measure of damages
— evidence.

In an action by the owner of a building, against a subway construction
company, to recover damages caused by the extension of the foundation
walls of the building down below the depth to which the excavation for
the subway was to be made, the measure of plaintiff's damages is the
difference between the value of the premises before and after the con-
struction of the subway in so far as the diminution in value was caused
by such construction or work incident thereto.

On all the evidence, *held*, that the verdict for the plaintiff should be reversed
and a new trial granted, unless the plaintiff stipulates to reduce the recovery
by an allowance for depreciation between the time the subway construc-
tion was commenced and the time of its completion.

APPEAL by the defendant, Rapid Transit Subway Construc-
tion Company, from a judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the
county of New York on the 15th day of March, 1919, upon the
verdict of a jury, and also from an order entered in said clerk's
office on the 18th day of March, 1919, as resettled by an order
entered in said clerk's office on the 28th day of March, 1919,
denying defendant's motion for a new trial made upon the
minutes.

*Henry J. Smith* of counsel [*James L. Quackenbush*, attorney],
for the appellant.

*Frederick N. Van Zandt* of counsel [*Edwin D. Webb* with
him on the brief; *Van Zandt & Webb*, attorneys], for the
respondent.

LAUGHLIN, J.:

In the month of June, 1914, the defendant entered into a
contract in writing with the city of New York for the construc-
tion of a subsurface railway northerly from Battery Park,

under Greenwich street to a point about seventy feet south of the southerly building line of Vesey street. The plaintiff is the owner of premises located on the route at the southeasterly corner of Thames and Greenwich streets, upon which a ten-story building of heavy masonry was erected in the year 1889. From the time of the construction of the building until the plaintiff purchased it in 1907 it was used for manufacturing purposes and there was installed on each floor and used, heavy machinery consisting of lathes, screw machines, punch presses, drilling machines and like machinery. After the purchase thereof by the plaintiff it was rented and used for maufacturing and printing, and in the printing business printing presses and other heavy machinery were employed. The defendant's contract required the construction of the subway for railway purposes in Greenwich street adjacent to the premises, and the defendant began the construction in Greenwich street, in front of the premises, in January, 1915. Prior to the commencement of the work the Public Service Commission, in conjunction with the plaintiff and the defendant, made an examination of the building and caused a report in writing to be made of the condition in which the building then was. It appears by that report that with the exception of cracks in the plaster and the usual conditions incident to wear and tear, the building was in a good, safe and sound condition. The foundation of the building extended nine feet six inches below the grade of the street. The subway excavation extended eighteen feet below the foundation of the building. This rendered it necessary to extend the foundation walls of the building down below the depth to which the excavation for the subway was to be made. The performance of that work, and the manner in which it was done, caused the building on the Greenwich street side to settle to the extent of about one and one-eighth inches and to tilt over Greenwich street at the top to the extent of two and seven-eighth inches, and caused structural and other changes therein which materially weakened the building.

The action is brought to recover the damages thereby sustained by the plaintiff. The defendant contracted, in substance, to restore any building injured by the subway construction to as useful, safe and good condition as existed before the construction began. The uncontradicted evidence shows that

the plaintiff's building could not be so restored, and the court, without exception being taken thereto, instructed the jury that that fact was conceded. It appears that the cost of reconstructing the building would approximate $356,000. That amount being in excess of the diminution of the value of the plaintiff's premises, including land and building, caused by the defendant's operations in constructing the subway, the measure of plaintiff's damages was the difference between the value of the premises before and after the construction of the subway in so far as the diminution in value was caused by such construction or work incident thereto. (*Hartshorn* v. *Chaddock*, 135 N. Y. 116; *Susswein* v. *Bradley Contracting Co.*, 184 App. Div. 852, 859; *Senglaup* v. *Acker Process Co.*, 121 id. 49; *Riley* v. *Continuous Rail Joint Co.*, 110 id. 787.)

The defendant conceded its liability, and, in the circumstances, the sole question for the jury was the difference between the value of the plaintiff's premises before and after the injuries to the building so caused by the defendant, or in other words, the diminution in value of the plaintiff's premises caused by the acts of the defendant. On a former trial the jury rendered a verdict in favor of the plaintiff for the sum of $5,000, which was set aside by the trial court as inadequate, and the order was affirmed by this court. (102 Misc. Rep. 433; affd., without opinion, 187 App. Div. 887.) The evidence shows that the damages to the plaintiff's building caused by the defendant's subway construction work continued over a period of about three years, and that in 1918 the building ceased to settle, and that it was not probable that there would be any further injury thereto. On the trial now under review the jury awarded a verdict in favor of the plaintiff for $50,550, which the appellant claims is excessive. All arguments of the appellant are directed to that point, and it is not claimed that there was any error on the trial or in the submission of the case to the jury to which exception was taken. Two competent experts were called by the plaintiff, and one by the defendant, all of whom testified to the value of the land and building separately before and after the damages, viz., in 1915 before the subway construction work was commenced, and three years later in 1918 after it was completed. They all differed somewhat with respect to the value of the land, but the principal

difference between the plaintiff's experts and the defendant's expert was with respect to the value of the building before and after it was so damaged. One of the experts called by the plaintiff testified that the value of the land and building in 1915 was $379,740, and that their value in 1918, after the construction work was completed, was $330,390; and the other testified that the value of the land and building in 1915, before the construction work was begun, was $387,000, and that their value in 1918, after the construction work was completed, was $335,250. The depreciation in value of the premises as given by one of the experts was $49,350; the depreciation given by the other was $51,750. The depreciation in value of the premises as given by these experts when added together and divided by two gives exactly the amount of the verdict, which renders it reasonably certain that the jury accepted their testimony and predicated their verdict thereon. The defendant's expert gave the value of the land and building in 1915 as $336,112, and in 1918 as $323,826, showing a depreciation, according to his testimony, of only $12,286. The learned counsel for the defendant argues on other facts developed that the opinion of the expert called by the defendant was entitled to greater consideration than was the opinion of either of the experts called by the plaintiff. We do not deem it necessary to state or to discuss the facts on which this contention is predicated for they were matters for the consideration of the jury and we cannot say that the jury erred in accepting the testimony of the plaintiff's experts or that their verdict based thereon is against the weight of the evidence. It is quite evident that the plaintiff's premises were materially diminished in value by the damages to the building, and just how much was a question for the opinion of competent experts. It appears, however, that the testimony of the plaintiff's experts, with respect to the value of the building in 1915, was given on the theory that during the first five years after the construction of the building, there was no measurable depreciation in its value, and that thereafter it depreciated in value at the rate of one per cent per annum. It does not appear that they made any allowance for depreciation during the three years intervening between the time the subway construction work was commenced in 1915 and the time of its completion in

1918. It is manifest from this testimony that there would have been a further depreciation of three per cent in the value of the building if there had been no injury to it by the defendant. This appears to have been overlooked both by the experts and by counsel for the experts were not interrogated with respect thereto. Assuming, therefore, as the jury have found, that the testimony of the experts called by the plaintiff was reliable, it is fairly to be inferred that in 1918 the building would have been worth three per cent less, even if the defendant had caused no injury thereto, than it was in 1915, and, therefore, the plaintiff's damages would be the difference between the value of the building in 1915, less three per cent, and its value in its damaged condition in 1918. The experts estimated the value of the building when constructed at twenty-two cents per cubic foot, on the basis of which the value of it originally as given by them was $253,000; and they determined its value in 1915 by applying said rule of depreciation. On that theory, three per cent of the original value would represent the depreciation between 1915 and 1918; and three per cent of $253,000 is $7,590. We are of the opinion, therefore, that the verdict on the theory on which it was rendered, namely, that the testimony of the experts should be accepted, is excessive by this amount.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff shall stipulate to reduce the recovery by said amount, in which event the judgment and order will be affirmed, without costs.

CLARKE, P. J., SMITH, MERRELL and PHILBIN, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, unless plaintiff stipulates to reduce the judgment as entered to $43,203.45; in which event the judgment as so modified and the order appealed from are affirmed, without costs. Settle order on notice.