[Civil No. 1989.   Filed November 28, 1922.]

[210 Pac. 685.]

# CITY OF GLOBE, a Municipal Corporation, Appellant, v. ALFRED RABOGLIATTI and His Wife, MARTHA RABOGLIATTI, DOMINICK RABOGLIATTI and His Wife, ISABELLE RABOGLIATTI, Appellees.

1. MUNICIPAL CORPORATIONS—IN ABSENCE OF STATUTE, PRESENTATION OF CLAIM FOR DAMAGES FROM TORT, REQUIRED BY ORDINANCE, IS NOT CONDITION PRECEDENT TO ACTION.—The presentation to the city council, as required by a city ordinance, of a claim for damages sustained by reason of a tort committed by the municipality, is not a condition precedent to an action for damages, in the absence of any statute or provision of the general laws under which the city was incorporated.

2. TRIAL—INSTRUCTION HELD ERRONEOUS AS TENDING TO LEAD THE JURY TO BELIEVE THAT DEFENSE WAS IMMATERIAL.—In an action against a municipality for injury to property, an instruction that, if defendant was negligent in the construction of culverts in making them too small for carrying the waters that might be expected to flow down the wash, and if the city was so negligent, it would be "immaterial" whether or not buildings clogged the culvert, *held*, though correct as an abstract principle of law, ground for reversal, as tending to mislead and emphasize as "immaterial" defendant's principal defense.

3. TRIAL — A REQUESTED INSTRUCTION, THOUGH DEFECTIVE, MAY REQUIRE THE GIVING OF A CORRECT INSTRUCTION.—An instruction requested by defendant, though defective in form, may be sufficient to require the court to give correct instruction on the issue involved.

4. DAMAGES—MEASURE OF DAMAGES FOR INJURY TO IMPROVEMENTS IS COST OF RESTORATION WHERE RESTORATION POSSIBLE.—The proper measure of damages for the destruction or injury of buildings, fences and like improvements, which may at once be replaced, where the exact cost of restoring the property is capable of definite ascertainment, there being no damage to the realty itself, is the cost, not exceeding the diminution in value of the property, of restoring or replacing such property, with compensation for the loss or impairment of its use during the reasonable time necessary to make such repairs.

5. DAMAGES—MEASURE OF DAMAGES FOR IRREPARABLE INJURY TO REAL PROPERTY IS DEPRECIATION IN MARKET VALUE.—Where the injury

to improvements on land is of such a character as to be irremediable except at great cost, or where the property cannot be restored to its former condition, the measure of damages is the depreciation in the market value of the entire property, or the cash value if there is no market value, by reason of the injury.

6. DAMAGES—TO PROVE DEPRECIATION, COST OF REPAIRS AND OF CONDITION OF PROPERTY BEFORE AND AFTER REPARABLE INJURY ADMISSIBLE.—Where in measuring damages for a reparable injury to property it is sought to arrive at the depreciation of the property after the injury, it is proper to admit evidence of the cost of repairs and of the condition of the property before and after the injury, as relevant to prove depreciation in value.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Judgment reversed and cause remanded for a new trial.

Mr. Clifford C. Faires and Mr. Charles L. Rawlins, for Appellant.

Mr. Norman J. Johnson, for Appellees.

FLANIGAN, J.—This action was brought by appellees to recover damages for injuries alleged to have been sustained by the flooding of their property through the negligence of appellant, City of Globe, in the grading and filling of the natural wash along what is known as Hackney Avenue in said city. In the course of this work the defendant city, it was alleged, did not exercise precaution to build two culverts or bridges of sufficient size to carry the flood waters that might be expected to flow down the wash, as shown by the experience of previous years. The proof offered on behalf of the plaintiffs tended to show that a flood which occurred in said city on July 12, 1919, because of the obstruction caused by the work and the insufficient size of two culverts, was diverted from the natural channel and flowed down and upon the property of plaintiffs. The property so injured consisted of two buildings, one of which was known

as the International Hotel, the upper story thereof being divided into rooms for such purpose, the lower floor consisting of three storerooms and a stairway leading to the upper story. The side and partition walls between the storerooms and stairway are five large adobe walls about three feet in thickness, the rear wall of the building being also of adobe. To the rear of this building and on the same lots is another one-story adobe building consisting of ten rooms.

The case was tried to the court, sitting with a jury, which returned a verdict for the plaintiff in the sum of $3,000, and judgment was rendered by the court upon this verdict in the sum awarded. From this judgment the defendant appeals.

The first assignment of error is that the action is not maintainable because no claim or demand for damages by reason of such injuries was ever presented to the common council of the city of Globe, as required by an ordinance of said city; it being asserted that under the provisions of this ordinance the presentation of such claim was a condition precedent to the right of plaintiff to maintain this action. The questions arising upon this assignment have been argued upon the assumption that the interpretation of the ordinance referred to is decisive of the question thus raised. But our attention has not been directed to any statutory provision or provision of the general laws under which the defendant city was incorporated which requires the filing or submission of any such claim to the governing body of the city of Globe as a condition precedent to plaintiffs' right of action. Neither has any authority been cited to us which holds that a municipal corporation may by its own ordinances alone exculpate itself from liability for a tort. In the absence of any such statutory provision, there can be no doubt that the presentation of a claim for

the payment of the damages sustained by reason of a tort committed by a municipal corporation is not a prerequisite to liability therefor.  See *Gill* v. *City of Oakland,* 124 Cal. 335, 57 Pac. 150, and generally, Dillon on Municipal Corporations, 5th ed., § 1613, and cases cited in *Miller* v. *Mullan,* 17 Idaho, 28, 19 Ann. Cas. 1113, 104 Pac. 660; 28 Cyc. 1757.

The giving of the following instruction is assigned as error:

''You are further instructed, gentlemen of the jury, that in the trial of this case it becomes material for you to find from a preponderance of the evidence, as I have defined that phrase to you, as to whether or not the city of Globe was negligent in the construction of the culvert which has been mentioned here as culvert No. 1 and the culvert No. 2, and if you should find from a preponderance of the evidence that the city was negligent in constructing culvert No. 1 and culvert No. 2 in that same were made too small for the purpose of carrying the waters that might be expected to flow down Hackney wash, you are instructed that it becomes immaterial as to whether or not the buildings testified to clogged culvert No. 1, and the plaintiff in this case would be entitled to recover if you find that the plaintiff was damaged by virtue of the water being diverted from culvert No. 1 by reason of the insufficient size and flowed down upon and damaged the property of the plaintiff.''

One of the principal defenses interposed by the defendant was that culvert No. 1 on Hackney Avenue became clogged by the washing against it of some small church buildings in the vicinity, and that without the operation of said cause the damage would not have been sustained.  The defendant introduced a number of witnesses who testified that before the culvert became clogged by these buildings the culvert was carrying the water successfully and that, if the buildings had not gone into or against this culvert, the water would have gone harmlessly away.

We presume it was intended by the instruction complained of to inform the jury that, if defendant was negligent in the construction of the culverts in that they were made too small for the purpose of carrying the waters that might be expected to flow down the wash, and such negligence was the sole cause of the injury, the jury should attach no significance to the obstruction of culvert No. 1 by these buildings. A scrutiny of the instruction shows it to be susceptible of this interpretation, and it may be that, so understood, it is defensible as an abstractly correct statement of the law. On the supposition, however, that defendant's negligence alone produced the injury, no remote cause nor mere attendant condition, whatever it might be, was of any importance, and by selecting and emphasizing as ''immaterial'' the fact of the obstruction of the culvert by the church buildings the jury were almost necessarily bound to infer that less weight was to be accorded the particular defense mentioned than they might otherwise think it entitled to receive. The reference to the obstruction of the culvert by the buildings in connection only with the immateriality of that fact, without further explanation or comment, must necessarily have obscured the real merits of the defense interposed. The instruction therefore tended to mislead and confuse the jury and to detract from the fair consideration of a defense supported by the very positive testimony of several witnesses.

We should not perhaps reverse the judgment for such error alone if an instruction properly covering this issue had been given. This was not done. The defendant requested the court to instruct the jury as follows:

''If you should find from the evidence that said culvert became clogged and choked without any negligence on the part of the defendant, and that said

clogging and choking caused said water to back up and overflow the embankment erected by said defendant, thereby causing the damage complained of by plaintiffs, and that said damage was not in any way directly contributed to by any negligence on the part of the city of Globe, and if you further believe from the evidence that the proximate cause of the injury to plaintiff's property was caused by the said culvert becoming clogged and choked during said storm by means over which the city had no control, to wit, by a house or building built and owned by parties other than the city, and thereby forcing the water from said storm that was then passing and running through said culvert to back up and flow over said embankment, and thereby causing said embankment to give way, and thereby permitting said water to flow down said Hackney Avenue on to the property of the plaintiffs, causing the damage complained of, if any, then the defendant is not liable for the damage sustained by the plaintiffs, and you must so find,"

—which instruction was refused. Nor was anything else to the same purport given. The instruction so requested is obviously not to be commended as an example of perspicuous and concise expression, but, as it embodies a theory of the facts which there was evidence to establish, and correctly states the law applicable thereto, the defendant was entitled to have the jury instructed in accordance therewith. We are convinced that the defendant was deprived of a fair presentation of one of its most substantial defenses against the claim of plaintiffs, and that the judgment should be reversed for such reason.

The court instructed the jury as follows:

"You are instructed that the measure of damages for the destruction of a building, or where the building is so permanently injured that it cannot be repaired, and where the building and the land on which it is situated belong to the same person, is the difference between the actual cash value of the property immediately before the damage to it and its actual

cash value immediately after the damage to it, and that such value is to be ascertained by taking the difference of the value of the entire property immediately before the damage to said building and the value thereof immediately after such damage.''

It is claimed by appellant that, as the action is for injuries to the buildings, and not to the land, the true measure of damages is the amount it would cost to repair the buildings and to place the same in as good condition as they were prior to the flood. The testimony on behalf of the plaintiffs tended to show that the buildings in certain respects were so injured that it was impossible to repair them, saturation of the adobe walls having made them soft and yielding, so that the walls, partitions and foundations cracked and settled, and the buildings sagged and tipped away from the perpendicular. Nevertheless plaintiffs at intervals during a period of ten months made certain repairs to the buildings at a cost, as they testified, of about $2,000. Testimony was also offered to show the difference in value of the land and buildings before and after the flood. On the part of defendant there was testimony introduced tending to prove that the permanent injuries to the buildings were caused not by the flood, but by a fire which occurred some time in 1914 and in other respects that the buildings had not been permanently damaged by the flood waters.

The rule given in by far the greater number of cases is that the proper measure of damages for the destruction or injury of buildings, fences and the like improvements, which may at once be replaced, where the exact cost of restoring the property is capable of definite ascertainment, there being no damage to the realty itself, is the cost of restoring or replacing such property with compensation for the loss or impairment of its use during the reasonable time neces-

sary to make such repairs or to effect such restoration. *Keats* v. *Gas Co. of Luzerne County,* 29 Pa. Super. Ct. 480; *Helbling* v. *Allegheny Cemetery Co.,* 201 Pa. 171, 50 Atl. 970; *Lexington & E. R. Co.* v. *Baker,* 156 Ky. 431, 161 S. W. 228; *Cincinnati, N. O. & T. P. R. Co.* v. *Falconer,* 30 Ky. Law Rep. 152, 97 S. W. 727; *Adams & Sullivan* v. *Sengel,* 177 Ky. 535, 7 A. L. R. 268, 197 S. W. 974; *Cooper* v. *Kankakee E. L. Co.,* 164 Ill. App. 581; *Fitz Simons & Connell Co.* v. *Braun & Fitts,* 94 Ill. App. 533; same case on appeal, 199 Ill. 390, 59 L. R. A. 421, 65 N. E. 249; *Slavin* v. *State,* 152 N. Y. 45, 46 N. E. 321; *White* v. *Chicago, M. & St. P. R. Co.,* 1 S. D. 326, 9 L. R. A. 824, 47 N. W. 146; *Watson* v. *Mississippi River Power Co.,* 174 Iowa, 23, L. R. A. 1916D, 101, 156 N. W. 188; *Silva* v. *City Council of City of McAlester,* 46 Okl. 150, 148 Pac. 150; *Anderson* v. *Miller,* 96 Tenn. 35, 54 Am. St. Rep. 812, 31 L. R. A. 604, 33 S. W. 615; *Empire Mills Co.* v. *Burrell Eng. & Const. Co.,* 18 Ga. App. 253, 89 S. E. 530; *Bates* v. *Warrick,* 77 N. J. L. 387, 71 Atl. 1116; 8 R. C. L., § 46, p. 485.

A different rule is applied where the injury is of such a character as to be irremediable except at great cost, or where the property cannot be restored to its former condition. The damage in such cases is held to be the depreciation in the market value of the property by reason of the injury, being the difference in such value immediately before and immediately after the sustaining thereof. *Hamilton Building Co.* v. *Rapid Transit Subway Const. Co.,* 102 Misc. Rep. 433, 170 N. Y. Supp. 4; *Kentucky Traction & Terminal Co.* v. *Bain,* 161 Ky. 44, 170 S. W. 499; *Hopkins* v. *American Pneumatic Service Co.,* 194 Mass. 582, 80 N. E. 624. And where the property has no market value, as such the difference in the actual cash value under such circumstances will unquestionably be the proper measure of such damages. *Cincinnati, N. O. &*

*T. P. R. Co.* v. *Falconer, supra; Chicago, R. I. & P. R. Co.* v. *Galvin,* 59 Okl. 258, L. R. A. 1917A, 365, 158 Pac. 1153; *Jacksonville, T. & K. W. R. Co.* v. *Peninsular Land, Transp. & Mfg. Co.,* 27 Fla. 1, 157, 17 L. R. A. 33, 65, 9 South. 661.

The reasons for the application of the different rules to the two cases are expressed in the case of *Cincinnati, N. O. & T. P. R. Co.* v. *Falconer, supra,* as follows:

"Compensation is the bottom principle of the law of damages. To restore the party injured, as near as may be, to his former position, is the purpose of allowing a money equivalent of his property which has been taken, injured, or destroyed. If the thing taken or destroyed can be replaced in the market, then obviously that sum of money which will buy another like it will repair the injury. So, if property is injured, but not destroyed, ordinarily the measure of damages, where the property can be repaired so as to be as it was before, is that sum that will restore the former condition. If the injury is such that it cannot be repaired by bestowing something upon, or adding it to, the injured property, then the measure of damages would be the value of the property just before its injury and its market value afterward. The latter measure is adopted, not as the ideal one, but as the surest of which the case is susceptible."

And also in *Hopkins* v. *American Pneumatic Service Co., supra:*

"The cost of restoration of the property to its former condition does not necessarily furnish a true criterion for determining damages. Sometimes to make such a restoration would be an uneconomical and improper way of using the property. It might involve a very large and disproportionate expense to relieve from the consequences of a slight injury. In many cases the cost of repairs would be an accurate measure of the damages. To incur the cost is often the best way of dealing with the property."

For further exposition of these reasons, see *Meyer* v. *City of Rosedale,* 84 Kan. 302, 113 Pac. 1043, and *Hartshorn* v. *Chaddock,* 135 N. Y. 116, 17 L. R. A. 426, 31 N. E. 997.

The application of these rules should not ordinarily produce substantial divergence in results, for even in those cases which hold that, where the injury is reparable at reasonable cost, the true measure of damages is the depreciation in the value of the property, it would seem to have been generally held proper to admit evidence of the cost of repairs and of the prior and subsequent condition of the property as relevant to prove the depreciation in value.  See, for example, *Jeffress* v. *Norfolk Southern R. Co.,* 158 N. C. 215, 73 S. E. 1013.  On this point also see *Hopkins* v. *American Pneumatic Service Co., supra,* and *Bates* v. *Warrick, supra.*

Under these authorities it would have been proper to instruct the jury, that, if the buildings were so permanently injured that it would be impossible by repairs to restore them to their former condition, and the buildings and the land on which they are situated belong to the same person, the true measure of damages would be the difference between the actual cash value of the property immediately before the injury and its actual cash value immediately afterwards. In the event that the jury should believe that the buildings could be restored to their former condition, then the cost of the repairs required to effect such restoration, together with compensation for the loss of the use of the property during the time necessary to effect the same, would be the true measure of damages, such sum not to exceed, however, the difference in the value of the entire property before and after the injury.  The limitation last given is undoubtedly proper upon the principle expressed in the case of *Hartshorn* v. *Chaddock, supra,* that when the cost of

restoration is more than the diminution in the value of the whole property, by reason of the injury, the latter is generally the true measure of damages; the rule of avoidable consequences requiring in such cases that the plaintiff shall diminish the loss so far as possible. See, also, *Enid & A. R. Co.* v. *Wiley,* 14 Okl. 310, 78 Pac. 96. On the trial the court permitted the introduction of evidence as to the cost of repairs on the buildings and the market value of the property before and after the flood. Such testimony was unquestionably proper, and the same evidence should be permitted on a new trial as relevant to either view of the facts the jury might take under the conflicting testimony.

What we have said will, we think, sufficiently indicate to court and counsel the rules to be followed on a new trial of the cause, and we are confident that instructions can be drawn which will fairly present the merits of the case to the jury.

The judgment will be reversed and the cause remanded, with instructions to grant a new trial.

ROSS, C. J., and McALISTER, J., concur.