**FOUNDERS BANK OF ARIZONA, in its capacity as successor Trustee of the Jasper Ebert Johnson and Harriett I. Johnson Revocable Trust, dated February 9, 1990, Plaintiff,**

v.

**CHRYSLER REALTY CORPORATION, Defendant.**

Civil Action No. 97–0942–PHX(WGY).

United States District Court,
D. Arizona.

March 2, 2000.

Peskind Hymson & Goldstein PC, Scottsdale, AZ, for Plaintiff.

Kirkland W. Garey, Howard & Howard Attorneys PC, Bloomfield Hills, MI, Philip R. Wooten, DeConcini McDonald Yetwin & Lacy PC, Phoenix, AZ, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.[1]

I. *Introduction*

This action involves a dispute between Founders Bank of Arizona ("Founders"), as successor trustee to various trusts that owned certain real property in Scottsdale, Arizona (the "Property"), and Chrysler Realty Corporation ("Chrysler"), the former lessee of the Property. Founders contends that Chrysler failed to maintain a building located on the Property (the "Building") in satisfactory condition as required under the lease (the "Lease"). Specifically, Founders contends that Chrysler failed to maintain the roof of the Building and that the cost of repair to the roof at the time the Lease was terminated was approximately $281,727. Chrysler argues in response that the Building had reached the end of its useful life at the time the Lease was terminated and, therefore, the measure of damages should be

---

1. Of the District of Massachusetts, sitting by designation.

the diminution in value caused by the failure to maintain the roof. The parties previously moved for partial summary judgment on these issues, and the motions were denied in an opinion by Judge Silver. *See Founders Bank v. Chrysler Realty Corp.,* Civ. 97–0942–PHX–ROS (D.Ariz. June 4, 1998) (the "June 4 Order"). Following further factual development, both parties have filed renewed motions for summary judgment, believing that the legal issues relating to the standard for measuring damages are dispositive.

## II. *Factual and Procedural Background*

On or about August 1, 1971, Chrysler leased the Property from Jasper and Harriet Johnson. *See* Joint Statement of Facts ¶ 1, Ex. 1 ("Joint Statement ¶ _"). The Building was built in 1965. *See id.* ¶ 3. The parties knew by the mid–1980s that at least a portion of the Property was going to be condemned by the City of Scottsdale for a road construction project. *See id.* ¶ 8. A portion of the Property was so taken by the City in 1994. *See id.* ¶ 9. On May 24, 1994, Chrysler terminated the Lease pursuant to a clause in the parties' amended Lease that permitted termination in the event of a condemnation proceeding by a government body. *See id.* ¶ 6, Ex. 5.

Pursuant to the condemnation proceedings, Founders obtained an appraisal of the Property which indicated its value as of February 22, 1994. *See* Joint Statement ¶ 10. That appraisal valued the entire parcel with buildings at $1,896,400 and opined that just compensation for the condemned portion of the Property would be $386,460. *See id.* ¶ 10, Ex. 7. The City of Scottsdale obtained an appraisal that valued the Property at $1,383,625 and opined that just compensation would be $184,825. *See id.* ¶ 11. Ultimately, Founders received $330,000 in compensation from the City of Scottsdale, while Chrysler received nothing. *See id.* ¶ 9.

At the time of the termination of the Lease, the roof of the Building was damaged and required repairs. *See id.* ¶ 12. No repairs were ever made to the roof of the Building by either party after Chrysler terminated the Lease. *See* Joint Statement ¶ 13. In August 1996, Founders sold the Building to Applewood Village Shopping Center for $1,975,000. *See id.* ¶ 15. All structures on the Property were demolished in 1997 to make room for construction of a motel. *See id.* ¶ 16.

From the Joint Statement of Facts, it appears that Chrysler has conceded that the roof of the Building was damaged and in need of repair. *See id.* ¶ 12. In its earlier cross-motion for summary judgment, Chrysler raised three distinct legal arguments contending that it was not liable under the Lease despite this admission that the Building was damaged. Judge Silver rejected one of those arguments and held that the remaining two could not be answered as matter of law. *See* June 4 Order at 4–8. The only argument that Chrysler now appears to press is the argument that the Building did not diminish in value because it was worthless when the Lease was terminated. Judge Silver found that the evidence on this question was ambiguous and that the parties had not briefed the crucial issue of who bore the burden of proof. These questions are the primary subject of the current round of motions.

## III. *Discussion*

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

### A. *Controlling Standard for Measuring Damages*

The parties differ significantly in their interpretation of controlling Arizona law and its standard for measuring damages when a tenant breaches its obligation to maintain premises in good condition.

Founders argues that damages are measured according to the cost of replacement, subject only to the limited exception that diminution in value shall be awarded either when the damage cannot be repaired or can be repaired but only at exorbitant cost. In contrast, Chrysler argues that damages are limited to the lesser of cost of repair or diminution in value.

The controlling standard originates in the single case of *City of Globe v. Rabogliatti*, 24 Ariz. 392, 210 P. 685 (1922), wherein the Supreme Court of Arizona was faced with a claim for damages to plaintiff's property resulting from the alleged negligence of the defendant. The Court first explicated existing case law on the question of how to measure damages in the case of partial damage to property:

The rule given in by far the greater number of cases is that the proper measure of damages for the destruction or injury of buildings, fences, and the like improvements, which may at once be replaced, where the exact cost of restoring the property is capable of definite ascertainment, there being no damage to the realty itself, is the cost of restoring or replacing such property with compensation for the loss or impairment of its use during the reasonable time necessary to make such repairs or to effect such restoration.

A different rule is applied where the injury is of such a character as to be irremediable except at great cost, or where the property cannot be restored to its former condition. The damage in such cases is held to be the depreciation in the market value of the property by reason of the injury, being the difference in such value immediately before and immediately after the sustaining thereof.

*Id.* at 398–400, 210 P. 685 (citations omitted). The court then determined whether the jury charge delivered in the particular case was proper. In making that determination, the court stated what may be considered the controlling standard in Arizona:

Under these authorities it would have been proper to instruct the jury, that, if the buildings were so permanently injured that it would be impossible by repairs to restore them to their former condition, and the buildings and the land on which they are situated belong to the same person, the true measure of damages would be the difference between the actual cash value of the property immediately before the injury and its actual cash value immediately afterwards. In the event that the jury should believe that the buildings could be restored to their former condition, then the cost of the repairs required to effect such restoration, together with compensation for the loss of the use of the property during the time necessary to effect the same, would be the true measure of damages, *such sum not to exceed, however, the difference in the value of the entire property before and after the injury.*

*Id.* at 401, 210 P. 685 (emphasis added). Thus, in the case of *City of Globe v. Rabogliatti*, the Supreme Court of Arizona rather unequivocally stated that the measure of damages is ordinarily the cost of replacement, subject to the limitation that damages should not exceed the diminution in value. This position was later followed and reinforced by the Arizona Court of Appeals. *See A.I.D. Ins. Servs. v. Riley*, 25 Ariz.App. 132, 136, 541 P.2d 595 (1975) ("The cost of repair or replacement cannot exceed the difference between the fair market value of the structure before and after the injury.") (citing *Rabogliatti*).

The reason for the parties' disagreement over this issue lies in the case of *SDR Associates v. ARG Enterprises, Inc.*, 170 Ariz. 1, 821 P.2d 268 (Ct.App.1991). In *SDR Associates*, the Court of Appeals was faced with a situation very much like the present dispute. The plaintiff lessor contended that the defendant lessee failed to return the premises in good condition as required by the lease because the lessee allowed the roof of the building to deterio-

rate significantly. *See id.* at 2, 821 P.2d 268. The Court of Appeals interpreted *Rabogliatti* as standing for the proposition that diminution in value only becomes relevant if the damage is irremediable. *See id.* at 2–3, 821 P.2d 268. It did not address the further language of *Rabogliatti* that imposed a diminution in value cap on all cost of replacement awards, regardless of remediability. Thus, *SDR Associates* appears to support Founders' position that the cost of replacement controls even when the diminution in value measure would be far less, so long as the property may practicably be repaired.

Other aspects of *SDR Associates,* however, make it clear that the Court of Appeals did not resolve this question in the manner argued by Founders. First, as the Court of Appeals expressly noted, the trial judge found that "[t]he diminution in value of the premises . . . is greater than the cost of repair or restoration." *Id.* at 2 n. 1, 821 P.2d 268. Thus, the Court of Appeals could not have revisited the *Rabogliatti* standard because it was not presented with a factual case in which to do so. Second, the court went on to conduct an analysis of the defendant lessee's evidence regarding diminution in value, apparently to assure itself that the *Rabogliatti* damage cap did not apply. *See id.* at 3–4, 821 P.2d 268 (discussing whether evidence that building was demolished constituted evidence that diminution in value was minimal). Thus, the *SDR Associates* court did not, in fact, refine the *Rabogliatti* standard but rather held that it was satisfied.

■ For the foregoing reasons, this Court holds that the measure of damages, under controlling Arizona precedent, is the cost of replacement or repair, subject to the exception that such an award should not exceed the diminution in value sustained as a result of the damage.[2]

## B. *Allocation of Burden of Proof*

The parties also disagree regarding who should bear the burden of proof on these issues. Founders contends that it bears an initial burden of showing damages by *either* the cost of replacement method or the diminution in value method, and that Chrysler must then introduce contradictory evidence of a lower amount. Chrysler, on the other hand, argues that Founders bears the burden of showing damages by *both* the replacement method and the diminution in value method, and that summary judgment is appropriate if Founders fails to satisfy that dual burden. As explained below, Founders' position is more consonant with the law of Arizona.

In advancing its dual burden theory, Chrysler relies upon a series of cases from the United States Court of Claims which:

> stand[ ] for the clear proposition that when plaintiff comes to trial, he bears a dual burden. He must first of all show what the cost of restoration (in this case, cost of repair) is. Thereafter, in order to benefit by the full measure of cost of repair, plaintiff must show that the diminution in fair market value exceeds the cost of repair. In any event, recovery based on the cost of repairs is subject to an absolute ceiling of 'diminution in fair market value.' Here, plaintiff carried only half its burden. Cost of repairs were shown in considerable detail. Diminution in value was virtually ig-

**2.** It should be noted, however, that Judge Silver in the June 4 Order adopted the strict reading of *SDR Associates;* that is, she held that the diminution in value standard only applies if it is shown that the Building damage was irremediable or could only be repaired at exorbitant cost. Even if the Court maintained that interpretation of *SDR Associates* as law of the case, it would not alter the balance of the reasoning in this memorandum and order, given that the burden of proof analysis would apply with equal force to the question of who bears the burden of showing that the Building damage was irremediable or could· only be repaired at exorbitant cost. In other words, because Chrysler bears the burden of proof regardless of how *SDR Associates* is interpreted, disposition of the instant motions does not depend on revisiting Judge Silver's ruling.

nored. Plaintiff simply failed to meet and carry its burden of proof.

*Missouri Baptist Hosp. v. United States,* 213 Ct.Cl. 505, 555 F.2d 290, 296 (1977) (footnote omitted).

Chrysler presents a fine analysis of the law applicable to contract claims against the United States government. Chrysler, however, makes no attempt to explain why the decisional law of the United States Court of Claims should be controlling in an Arizona lease dispute. Chrysler admits that "[a] few jurisdictions allow a lessor to present evidence of either cost of repair or diminution in value, and do not require the lessor to bear the burden of proof on both issues." Def.'s Mem. in Supp. at 10 n. 3. Interestingly, Arizona is among these "few jurisdictions." *See Mikol v. Vlahopoulos,* 86 Ariz. 93, 95, 340 P.2d 1000 (1959) ("[W]here these two measures of damage are possible, and the plaintiff gives evidence as to one of them, it is up to the defendant, who has the burden of showing a reduction in damages, to show that the other measure would be less.") (citations omitted); *see also In re Evergreen Ventures,* 147 B.R. 751, 758 (Bankr.D.Ariz. 1992) ("Where damages to realty may be measured, either by the difference in the market value immediately before and immediately after injury, or by the cost of restoration, and the plaintiff gives evidence as to one, it is up to the defendant who has the burden of showing a reduction in damages, to show that the other measure of damages would be less.") (citing *Mikol*).

■ Because the law of Arizona is clear, the Court declines Chrysler's invitation to import unusual legal concepts from the United States Court of Claims. Instead, the Court holds that Founders bears an initial burden of demonstrating damages by either the cost of replacement method or the diminution in value method, and that Chrysler must then introduce contradictory evidence of a lower amount.

## C. Application to Undisputed Evidence

At oral argument on May 29, 1998 and again on November 4, 1999, the parties stipulated that the cost of repair to the roof of the Building was between $150,000 and $254, 000.[3] Thus, Founders has satisfied its initial burden of offering evidence regarding the cost of repairing the roof. Chrysler in turn has presented an argument that it believes establishes the diminution in value measure at a much lower amount, i.e., zero dollars. Thus, Chrysler believes that it is entitled to summary judgment, given that the lesser of $281,727 and $0 is $0. Chrysler's argument hinges primarily on the fact that, prior to the termination of the Lease, the Property was appraised at an amount less than what Founders obtained for it in a sale shortly after termination (the "Mashburn Appraisal").

This argument suffers from a misunderstanding of the law. As the Arizona Court of Appeals made clear in *A.I.D. Insurance Services,* "[t]he cost of repair or replacement cannot exceed the difference between the fair market value of the structure *before and after the injury."* *A.I.D. Ins. Servs.,* 25 Ariz.App. at 136, 541 P.2d 595 (emphasis added). In other words, diminution in value is measured as the difference in value of the Building if properly maintained and the Building as it actually existed at the time the Lease was terminated. Chrysler fails to appreciate that Mashburn examined and appraised the Building *in its damaged condition.* Thus, the opinion issued by Mashburn cannot by itself answer the question whether Founders sustained harm as a result of Chrysler's neglect. That question can only be answered by examining Mashburn's appraisal with an expert estimate of what the Building would have been worth *in a properly maintained condition.* Because it was Chrysler's duty to produce such evi-

---

**3.** Founders has also presented an affidavit from construction experts which places the cost at $281,727. *See* Eager Aff. ¶ 2, Ex. A.

dence, *see supra* Section III.B., the evidentiary deficit must be drawn against it.

Nevertheless, Chrysler contends that the Mashburn Appraisal establishes the diminution in value at zero because Mashburn concluded that "[t]he Highest and Best Use of the subject site as improved i[s] considered to be consistent with that as if vacant." Joint Statement Ex. 7 at 67. In other words, Mashburn attributed no value to the Building in computing a total value for the Property, whether or not the Building's roof was damaged. Likewise, Chrysler argues that Founders eventually received an amount greater than the Mashburn appraisal in a sale after termination of the Lease. Chrysler believes that these two pieces of evidence establish that the diminution in value of the Building was zero.

Similar arguments have been rejected by the courts of Arizona. *See SDR Associates*, 170 Ariz. at 3, 821 P.2d 268 ("[T]he test for diminution in value is the difference immediately before and after the lease was terminated, and subsequent events affecting value are irrelevant to that determination."). In *SDR Associates*, the defendant argued that no diminution in value occurred because the plaintiff demolished the disputed building soon after termination of the lease. The Arizona Court of Appeals rejected this argument, reasoning that such "evidence [is] irrelevant because when the lease expired the breach arising from deterioration of the premises occurred and the damages were not subject to mitigation." *Id.* at 4, 821 P.2d 268 (footnote omitted). The Court cited with approval the following language from *Farrell Lines, Inc. v. City of New York*, 30 N.Y.2d 76, 330 N.Y.S.2d 358, 281 N.E.2d 162, 166 (1972), in which the court considered the argument that repairing damaged property would have been of no benefit since the plaintiff demolished the property soon after the breach:

> Similar contentions have been urged before other courts, and they have been uniformly rejected, the courts holding that the lessee's liability is unaffected by such circumstances. In our opinion, this

view is sound, and should be adhered to. Not only does it give recognition to the fact that as a result of the lessee's failure to repair, the lessor may have had a narrower market for his property [citation omitted], but also to the fact that lessors generally will link the amount of rental charged with such covenants of repair.

In short, Chrysler's arguments that the Building did not enhance the value of the Property or that Founders received a fair price for the Property is irrelevant to the claim that the Building was damaged upon its return to Founders. Because Chrysler has offered no other evidence to support its claim that Founders suffered no diminution in value—a matter upon which Chrysler bears the burden of proof—Chrysler's motion for summary judgment is DENIED. In the absence of credible evidence regarding the diminution in value of the Property, the Court rules that the cost of repair is the controlling measure of damages. The parties have stipulated that the cost of repair to the Building was between $150,000 and $254,000. This issue has been submitted as case stated and now awaits final argument.

## IV. *Conclusion*

Because Chrysler's proffered evidence fails adequately to support its position that Founders suffered *no diminution in value* of the Property, the Court DENIES Chrysler's motion for summary judgment [Docket # 29]. As a result, the cost of the roof's repair is the controlling measure of damages. Therefore, the Court ALLOWS Founder's motion for summary judgment with respect to the legal standard for measuring damages [Docket # 35].

SO ORDERED.